UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                :

UNITED STATES OF AMERICA,          :

        - v. -                           :  S2 15 Cr. 765 (PAC)

EFRAIN ANTONIO CAMPO FLORES and  :
FRANQUI FRANCISCO FLORES DE FREITAS,  :

        Defendants.                 :

------------------------------------------------------------X


**DEFENDANTS' JOINT MOTION TO COMPEL**
**PROMPT PRODUCTION OF *BRADY* AND *GIGLIO* MATERIAL**
<u>**AND THE IDENTITIES OF CONFIDENTIAL INFORMANTS**</u>

**TABLE OF CONTENTS**

Page

**INTRODUCTION** ..................................................................................................................1

**ARGUMENT** .........................................................................................................................2

    I.    *Brady* Compels Immediate Disclosure of All Information Supporting the Defendants' Potential Trial Defenses. ...............................................................2

    II.    The Court Should Order the Government to Disclose the Identity of Its Confidential Informants. ....................................................................................5

    III.    The Court Should Direct the Government to Produce *Giglio* Material No Later Than 90 Days Before Trial. ....................................................................8

**CONCLUSION** ..................................................................................................................11

**INTRODUCTION**

Defendants Efrain Antonio Campo Flores and Franqui Francisco Flores de Freitas (collectively, "Defendants") were working at legitimate jobs and living peacefully with their families in their native country of Venezuela, when they were picked out and targeted for a narcotics "sting" operation, possibly for reasons of raw international politics. The operatives who carried out the sting were paid confidential informants, based in multiple Latin American countries, who were working at the direction of the United States Drug Enforcement Administration ("DEA"). The manner in which the DEA informants conducted themselves (*see, e.g.*, Defs. Joint Mot. to Suppress Evid. on the Basis of Spoliation) in their attempt to lure these two young men into the international drug trade—despite the targets' lack of criminal histories, lack of knowledge or experience about drug trafficking, and lack of capacity to transport the quantities of drugs being asked of them—raises many unanswered questions and calls for the disclosure of all information in the Government's possession that tends to exculpate the Defendants in these circumstances and impeach the informants who attempted to ensnare them.

For these reasons, the Defendants ask the Court to compel the Government to: (1) immediately disclose all information supporting any potential trial defenses as required under *Brady* v. *Maryland*, 373 U.S. 83 (1963), including any evidence of Government entrapment or the absence of the *mens rea* required for the charged crimes; (2) disclose the identity of the Government's confidential informants; and (3) disclose all impeachment material pursuant to *Giglio* v. *United States*, 405 U.S. 150 (1972), at least 90 days before trial, so that the Defendants have sufficient time to make effective use of it at trial.

## ARGUMENT

**I.** *Brady* **Compels Immediate Disclosure of All Information Supporting the Defendants' Potential Trial Defenses.**

"[T]he Government has a duty to disclose evidence favorable to the defendant when it is material to guilt or punishment." *United States* v. *Scott*, 637 F. App'x 10, 15 (2d Cir. 2015) (quoting *Brady* v. *Maryland*, 373 U.S. 83, 83 (1963)); *see also Lewis* v. *Conn. Comm'r of Corr.*, 790 F.3d 109, 121 (2d Cir. 2015) ("[T]he prosecution has a clear and unconditional duty to disclose all material, exculpatory evidence." (quoting *Brady*, 373 U.S. at 87)). Although there is no set timeline for its disclosure, *Brady* information must be disclosed "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial." *United States* v. *Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008) (quoting *United States* v. *Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) (internal quotation marks omitted)).

The scope of the Government's obligation under *Brady* is broad. Indeed, the duty applies not only to "evidence that tends to exculpate the accused, but also to evidence that is useful to impeach the credibility of a government witness," *United States* v. *Coppa*, 267 F.3d 132, 139 (2d Cir. 2001) (quoting *Giglio*, 405 U.S. at 154), and to "evidence having both an inculpatory and exculpatory effect," *DiSimone* v. *Phillips*, 461 F.3d 181, 195 (2d Cir. 2006) (citations and internal quotation marks omitted). In addition, the duty to disclose favorable information "exists without regard to whether that information has been recorded in tangible form," or "whether the information to be disclosed is admissible as evidence in its present form." *Rodriguez*, 496 F.3d at 226, 229 n.4. Importantly, because favorable evidence includes that which "tends to show that the accused is not guilty," *United States* v. *Jackson*, 345 F.3d 59, 71 (2d Cir. 2003), it

encompasses evidence that may support potential affirmative defenses, which negate the guilt of the accused.

Among the defenses that would entitle a defendant to acquittal are defenses of entrapment or a lack of the *mens rea* required for the offense charged. As to entrapment, a defendant is entitled to an acquittal if a jury finds (1) "government inducement of the crime," and (2) "a lack of predisposition on the part of the defendant[s] to engage in criminal conduct." *United States* v. *Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014) (quoting *Mathews* v. *United States*, 485 U.S. 58, 63 (1988)). With respect to *mens rea*, in an alleged narcotics importation case such as this one, a defendant is entitled to an acquittal if the jury has a reasonable doubt that the defendant knew of a plan to, or intended to, import narcotics into the United States. *United States* v. *Londono-Villa*, 930 F.2d 994, 998 (2d Cir. 1991) ("[I]n order to establish the offenses defined in [21 U.S.C.] §§ 952, 960, and 963, the [G]overnment is required to prove that the defendant knew or intended that the destination of the narcotics would be the United States.").

Given the contours of these potential defenses and the circumstances of this case, the need for immediate disclosure of *Brady* material relevant to those defenses is clear. For example, to present a successful entrapment defense, a defendant must carry the burden of production on the issue of whether he was "induced" into the crime—"that it was the government, not he, that originated 'the criminal design.'" *United States* v. *Brand*, 467 F.3d 179, 189 (2d Cir. 2006) (quoting *Jacobson* v. *United States*, 503 U.S. 540, 548 (1992)). Although this burden is slight, a defendant must still put forth some evidence of inducement, as "a defendant cannot simply point to the government's use of an undercover agent or confidential informant." *Brand*, 467 F.3d at 190. As courts in the circuit have recognized, *Brady* material is central to this undertaking. *See United States* v. *Koschtschuk*, No. 09 Cr. 0096 (S)(M), 2011 WL 1549464, at

3

\*2 (W.D.N.Y. Apr. 22, 2011) (compelling production of information not covered by Rule 16 under *Brady* in light of the defendant's entrapment defense);*United States* v. *Cromitie*, No. 09 Cr. 558 (CM) (S.D.N.Y. May 18, 2010), D.E.57 ("[T]he Court interprets *Brady* in this case to include any information in the possession of the Government which is corroborative of or supportive of Government inducement or lack of defendant predisposition.  The Government acts at its peril if it fails to provide defendants with any information of this type that is in its possession." (citation omitted)); *see also United States* v. *Prochilo*, 629 F.3d 264, 269 (1st Cir. 2011) (noting that *Brady* required the Government to produce "any evidence indicating that the witness had improperly induced [the defendant] or others to commit crimes"); *United States* v. *Ford*, 550 F.3d 975, 983 (10th Cir. 2008) (finding undisclosed communications with a confidential informant to be favorable to the accused in light of the defendants' entrapment defense).

In addition, although the Defendants have no burden of proof as to the *mens rea* element of the charged offense, in the context of this alleged international narcotics conspiracy, like the issue of entrapment, there is a pressing need for *Brady* material bearing on the issue of whether the Defendants knew or intended that narcotics would be imported into the United States.  (*See* Defs. Joint Mot. For a Bill of Particulars).  From any vantage point, this case lacks a clear connection to the United States.  Indeed, as charged in the Indictment, the foreign Defendants allegedly met in a foreign country regarding narcotics to be shipped through yet another foreign country.  (Indictment ¶ 5(a)).  The Government alleges, as it must, that despite all this conduct outside of the United States, the Defendants were "intending and knowing" that narcotics would be imported into the United States.  (Indictment ¶¶ 3–4).  *Brady* material suggesting that the alleged conduct had no nexus to the United States—or that such nexus was merely manufactured

4

by the Government or informants working at its direction—would be central to any *mens rea*-related arguments at trial.

In light of the need to adequately prepare for trial and develop potential defenses in the context of the complex, multi-national allegations put forth by the Government, the Defendants request immediate disclosure of *Brady* material supporting potential defenses, including entrapment and a lack of *mens rea*. Although the Defendants are in no position to know the precise information possessed by the Government, the Defendants request:

1. Evidence regarding the Government's motivation in pursuing the Defendants, including all evidence and information related to the investigation, prosecution, or arrest of the Defendants that concerns the administration of President Nicolas Maduro of Venezuela, his wife, Cilia Flores, or the elections in Venezuela in December 2015.

2. Evidence related to the Government's role—directly or indirectly through the informants—in "soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged," *Brand*, 467 F.3d at 190 (quoting *United States* v. *Sherman*, 200 F.2d 880, 882–83 (2d Cir. 1952) (Hand, J.)), including evidence of (a) communications between the informants and government agents or their superiors; (b) evidence of benefits promised, offered or given to the Defendants by the Government or its informants; and (c) documents prepared by DEA personnel pertaining to this case.

3. Evidence suggesting that the Defendants lacked the knowledge or intent required for the charged crime, including: (a) statements, recordings, documents, or other evidence in the Government's possession, reflecting efforts by drug cartels to import narcotics into locations other than the United States; and (b) communications between the Government and the confidential informants concerning the need to establish a nexus to the United States.

**II.     The Court Should Order the Government to Disclose the Identity of Its Confidential Informants.**

Separate and apart from the Government's duty to disclose information consistent with its obligations under *Brady*, to ensure that the Defendants are able to prepare for trial and are not unfairly prejudiced, the Court should order the Government to disclose the identity of its confidential informants in this case.

5

Although the Government has a privilege "to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law," that privilege is limited by "fundamental requirements of fairness."  *Roviaro* v. *United States*, 353 U.S. 53, 59–60 (1957) (citations omitted).

> Where the disclosure of an informer's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way.  In these situations the trial court may require disclosure and, if the Government withholds the information, dismiss the action.

*Id.* at 60–61.  In making this fairness determination, a number of factors must be balanced, including "the crime charged, the possible defenses, [and] the possible significance of the informer's testimony."  *United States* v. *Saa*, 859 F.2d 1067, 1073 (2d Cir. 1988) (citations and internal quotation marks omitted).  "If this balancing favors the defendant, then he is entitled to learn the identity of the government's informant."  *United States* v. *Jackson*, 345 F.3d 59, 70 (2d Cir. 2003).

"Disclosure is generally required 'where the informant is a key witness or participant in the crime charged, someone whose testimony would be significant in determining guilt or innocence.'"  *United States* v. *Rodas*, No. 91 Cr. 1036 (LLS), 1992 WL 30936, at *1 (S.D.N.Y. Feb. 13, 1992) (quoting *Saa*, 859 F.2d at 1073).  In *Rodas*, the court ruled that, although the Government normally enjoyed a privilege from disclosure, given the informants' role in the underlying crime, either disclosure or presentation of the informant for interview by the defense was warranted.  *Rodas*, 1992 WL 30936, at *1–2.  Specifically, the court emphasized that disclosure or interview was warranted because the informant "helped to set up the criminal occurrence and had played a prominent part in it," and his testimony "might have disclosed an entrapment," or "thrown doubt upon [defendant's] identity."  *Id.* at *2.  *See also United States* v. *Steele*, 83 F. Supp. 2d 340, 343 (N.D.N.Y. 2000) (ordering that "the identities of the[] informants

6

should be revealed to the defendant[,]" where "the informants were witnesses to and direct participants in all of the significant events surrounding the crimes charged" and "[a]s such, they [were] 'obviously . . . crucial witness[es] to the alleged narcotics transactions'") (quoting *United States* v. *Roberts*, 388 F.2d 646, 649 (2d Cir. 1968)).

Applying these principles here, it is clear that testimony from the confidential informants will be crucial to developing defenses that may be asserted by the Defendants at trial, namely entrapment and lack of *mens rea*.

*First*, information from confidential informants will be critical in investigating and developing an entrapment defense. Specifically, it is vital that the Defendants be able to evaluate whether to seek to call those informants at trial or, alternatively, to adequately prepare to examine them if they testify for the prosecution. Such testimony may be critical to determining the extent to which the Government, through its informants, lured the Defendants into committing the alleged crimes in such a way as to qualify as a crime under federal law. This is even more critical given the spoliation of evidence concerning key interactions between the Defendants and the informants. (*See* Defs. Spoliation Mot."). The dearth of informant-related information caused by that spoliation leaves the Defendants with no way to develop critical evidence about the conduct of the confidential informants, the content of Government-monitored meetings involving those informants, or any detail whatsoever concerning the Government's relationship and interaction with the informants at critical junctures in the investigation and prosecution of this case.

*Second*, with regard to a potential *mens rea* defense, it is imperative that defense counsel be able to test the informants' actual knowledge of events that occurred in the past. Indeed, in

7

*DiBlasio* v. *Keane*, 932 F.2d 1038 (2d Cir. 1991), the Second Circuit recognized that both entrapment and *mens rea* defenses will often require the disclosure of an informant's identity:

> [W]hen the defendant raises the defense of entrapment, or claims that he did not have the requisite state of mind for the offense charged, testimony about events preceding and in between these crimes may be as material as that detailing their actual commission, or more so. The Supreme Court realized as much in *Roviaro*, when it required the informant's identity to be disclosed because, among other reasons, "Doe had helped to set up the criminal occurrence and had played a prominent part in it. His testimony might have disclosed an entrapment."

*Id*. at 1042; *see also United States* v. *Jackson*, 345 F.3d 59, 69–70 (2d Cir. 2003) (approving informant identity disclosure to facilitate entrapment defense to drug sale charge). To permit adequate time for investigation and preparation, Defendants respectfully request such disclosure no later than 90 days prior to trial.

### III. The Court Should Direct the Government to Produce *Giglio* Material No Later Than 90 Days Before Trial.

In addition to disclosing exculpatory evidence, the Government is required to disclose evidence useful for impeachment purposes. *Coppa*, 267 F.3d at 139 (citing *Giglio*, 405 U.S. at 154). As noted in Section I, *supra*, there is no set time for the Government's *Brady* or *Giglio* disclosures—such information must be disclosed "in a manner that gives the defendant a reasonable opportunity either to use the evidence in the trial or to use the information to obtain evidence for use in the trial." *Rittweger*, 524 F.3d at 180 (citations omitted). While immediate disclosure may not be required, "[e]arly disclosures . . . may be appropriate where the [d]efense would require significant time to investigate and make effective use of the disclosure." *United States* v. *Mohamed*, 13 Cr. 527(WFK), 2015 WL 7738016, at *9 (E.D.N.Y. Dec. 1, 2015) (citations omitted).

8

Here, Defendants submit that disclosure of *Giglio* material no later than 90 days before trial is required to permit the Defendants time to effectively prepare for trial. Given the complex nature of the allegations in this case and the fact that all of the activity took place in multiple different countries in South America, Central America, and the Caribbean; that key documents in the case will be in multiple foreign languages; and that the Government employed multiple confidential informants (based in multiple jurisdictions) to ensnare the Defendants, defense counsel will need substantial time to review and investigate any production of *Giglio* material. In order to make effective use of such information at trial, the Defendants submit that the *Giglio* material must be produced to them at least 90 days before trial.

In particular, the Defendants ask the Court to order the Government to produce, no later than 90 days before trial: (1) the complete "CS" or "CI" file of any informant or other confidential source used during the course of this investigation, including but not limited to, all evidence of compensation or benefits given to the informants by any government, at any time, all evidence of criminal conduct by such informants, and all evidence regarding disciplinary actions or negative evaluations against such informants; and (2) all information and documents concerning any informant's history of drug use.

As to the latter, the Defendants further ask the Court to direct the Government to preserve all evidence of drug use by the confidential informants in this case to the extent that it has not been disclosed to the DEA, such as by requiring the confidential informants to submit to drug testing. As described in the Defendants' Joint Motion to Suppress Evidence on the Basis of Spoliation, at various points during the course of the investigation the confidential informants were observed using cocaine, and yet no disclosure of such activity has appeared in any of the discovery disclosed to date. (*See* Decl. of Efrain Antonio Campo Flores ("Campo Flores Decl.")

9

¶ 7, annexed to the Decl. of John T. Zach in Supp. of Defs. Joint Mot. to Suppress Evid. on the Basis of Spoliation as Ex. A).  The use of controlled substances by the informants, particularly where it was not disclosed to their DEA handlers, calls into question whether their perception and recollection of key events during the investigation can be credited.  Indeed, for these very reasons, the use of such substances by government operatives during an investigation is prohibited by DEA regulations.  See *Drug Policy*, DEA, https://www.dea.gov/careers/drug-policy.shtml (last visited June 26, 2016).  Indeed, the undisclosed use of cocaine by the confidential informants during key points of the investigation implicates both the bad faith inquiry relevant to Defendants' spoliation arguments and valid *Giglio* concerns that require this measure.

    In order to preserve this potentially vital *Giglio* information, the Court should require the confidential informants to submit to hair testing for the use of narcotics.  *See, e.g.*, *United States* v. *Jacobs*, 650 F. Supp. 2d 160, 168 (D. Conn. 2009) (granting defendant's motion to preserve presumed *Giglio* material).  In the same way that potentially vital *Giglio* material may be lost if agents are not required to preserve notes upon an application by the defense, the Defendants here will lose the opportunity to preserve vital *Giglio* information if the confidential informants are not required to submit to hair testing now, within the limited window during which hair testing may reveal improper use of narcotics during the investigation. (*See* Campo Flores Decl. ¶ 7).

**CONCLUSION**

    For these reasons, Defendants respectfully ask to the Court to compel the Government to: (1) immediately disclose all information supporting any potential trial defenses as required under *Brady*, including any evidence of Government entrapment or the absence of the *mens rea* required for the charged crimes; (2) disclose the identity of the Government's confidential informants; and (3) disclose at least 90 days before trial all impeachment material pursuant to *Giglio*.

Dated: July 1, 2016
New York, New York

                                                        Respectfully Submitted,

                                                        /s/ Randall W. Jackson
                                           Randall W. Jackson
                                           John T. Zach
                                           BOIES, SCHILLER & FLEXNER LLP
                                           575 Lexington Avenue
                                           New York, New York 10022
                                           Telephone:   (212) 446–2300
                                           Facsimile:    (212) 446–2350

                                           *Attorneys for Defendant Efrain Antonio Campo Flores*


                                                        /s/ David M. Rody
                                           David M. Rody
                                           Michael D. Mann
                                           SIDLEY AUSTIN LLP
                                           787 Seventh Avenue
                                           New York, New York 10019
                                           Telephone:   (212) 839–5300
                                           Facsimile:    (212) 839–5599

                                           *Attorneys for Defendant Franqui Francisco Flores de Freitas*