```
G97EFLOC
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                New York, N.Y.

            v.                           15 CR 765(PAC)

EFRAIN ANTONIO CAMPO FLORES,
et al.,

                Defendants.

------------------------------x

                                         September 7, 2016
                                         4:05 p.m.

Before:

                    HON. PAUL A. CROTTY,

                                         District Judge

                         APPEARANCES

PREET BHARARA
     United States Attorney for the
     Southern District of New York
BY:  EMIL BOVE
     BRENDAN QUIGLEY
     Assistant United States Attorneys

BOIES SCHILLER & FLEXNER, LLP
     Attorneys for Defendant Campo Flores

SIDLEY AUSTIN, LLP
     Attorneys for Defendant Flores De Freitas
BY:  DAVID RODY
     MICHAEL D. MANN
     ELIZABETH ANNE ESPINOSA

SPANISH INTERPRETERS:  HUMBERTO GARCIA
                       ERIKA DE LOS RIOS

1          (Case called)

2          THE DEPUTY CLERK:  Counsel for the government, please
3  state your appearances.

4          MR. BOVE:  Good afternoon, your Honor.  Emil Bove and
5  Brendan Quigley for the government.  And we have here with us
6  Peter Calabrese, who's a paralegal at our office.

7          THE COURT:  Thank you very much.

8          THE DEPUTY CLERK:  For the defendants?

9          MR. JACKSON:  Randall Jackson and John Zach for
10  defendant Efrain Campo Flores.  Good afternoon, your Honor.

11          THE COURT:  Mr. Jackson, Mr. Zach.

12          MR. RODY:  Good afternoon, your Honor.  Dave Rody,
13  Mike Mann and Elizabeth Espinosa for Mr. Franqui Francisco
14  Flores De Freitas.

15          THE COURT:  Thank you for coming.

16          I thought I would have this conference just so we are
17  proceeding as expeditiously as possible tomorrow.  The schedule
18  will be 9:30 to 5:00.  We'll take a break in the morning and a
19  break in the afternoon, 10 to 15 minutes, and an hour and a
20  half for lunch.  The same schedule will be on Friday.

21          We've installed a metal detector outside room 14C.
22  We're not going to have cell phones, except for people sitting
23  at counsel table, including both the government and the defense
24  counsel.

25          I got the 3500 materials.  How many witnesses do the

1   government plan on calling, Mr. Bove?

2         MR. BOVE:  Your Honor, we have five US law enforcement

3   witnesses, one witness from Haiti who's a law enforcement

4   officer, and then there are the three confidential sources that

5   have been referenced in the motion papers will be available.

6         THE COURT:  Will be available or will testify?  It

7   depends, I suppose.

8         MR. BOVE:  It will depend, from the government's

9   perspective, on how the initial testimony comes in.  And we

10  will make a decision after the law enforcement testimony about

11  whether we feel the need to call the confidential sources.  If

12  we elect not to, we understand, based on the defense subpoenas,

13  that they will likely call them as witnesses.

14        THE COURT:  The sketch artists, I'm going to advise --

15  does anybody have any objection if the sketch artist is sitting

16  in the jury box?

17        MR. JACKSON:  No, your Honor.

18        MR. BOVE:  No, your Honor.  Thank you.

19        THE COURT:  And I'm going to instruct the sketch

20  artists that they can sketch anything they want, except they

21  can't show any of the witnesses, the faces of the witnesses.

22        MR. BOVE:  Thank you, Judge.

23        THE COURT:  Anybody have any comments on that?

24  Mr. Jackson?  Mr. Rody?

25        MR. JACKSON:  No, your Honor.  Thank you.

1        THE COURT:  Mr. Rody?  Mr. Mann?
2        MR. RODY:  No, your Honor.
3        THE COURT:  That's all right.
4        Mr. Bove, do you want to take up anything?
5        MR. BOVE:  Not from our perspective.  No, your Honor.
6        THE COURT:  Okay.  Anybody on the defense side?
7        MR. JACKSON:  Just one issue, your Honor.
8        Just in terms of the order of witnesses, your Honor,
9   we would respectfully submit that the confidential sources
10  should testify before the government agents.  We've discussed
11  this with the government, and we haven't really been able to
12  reach a resolution.  Obviously they are going first, but my
13  understanding is --
14       THE COURT:  Yes.
15       MR. JACKSON:  Yes, your Honor.  But my understanding
16  is that from our last conversation, they do intend to call, to
17  elicit at least some testimony from the confidential sources no
18  matter what.
19       The only problem it's created, your Honor, by the
20  decision to go with the government agents before the
21  confidential sources, is that they have provided to us a
22  significant amount of impeachment material that relates to the
23  confidential sources.  And it's serious impeachment material.
24  The witnesses related to that impeachment material are the
25  government agents.  And so from our perspective, your Honor, it

1   seems to make sense to go first with the confidential
2   sources --
3             THE COURT:  I'm not going to tell the government how
4   to try their case, Mr. Jackson.
5             MR. JACKSON:  Absolutely, your Honor.
6             Nothing further.
7             THE COURT:  Is that it for you?  Do you have any other
8   objections or comments you want to make, Mr. Jackson?
9             MR. JACKSON:  No, your Honor.  Thank you.
10            THE COURT:  And Mr. Mann?  Mr. Rody?
11            MR. RODY:  No, your Honor.
12            THE COURT:  All right.  Well, I'll see you at 9:30
13  tomorrow morning, then.
14            You've given up the 3500 material?  I have it all?
15            MR. BOVE:  We do expect that some additional 3500
16  material will be created this evening, and we'll bring those
17  additional documents.
18            THE COURT:  How extensive is that going to be,
19  Mr. Bove?
20            MR. BOVE:  Just some notes from preparation sessions,
21  your Honor.  It won't be lengthy.
22            THE COURT:  Thank you very much.
23            Let me ask you a question about the spoliation motion.
24  Is the defense theory that the spoliation motion with regard to
25  the drugs is that the confidential sources had a sample and

1   then destroyed the samples?
2             MR. JACKSON:  That is correct, your Honor.
3             THE COURT:  Is that it?
4             MR. JACKSON:  Yes, your Honor.
5             THE COURT:  They took the sample from the drugs
6   supplied by the two defendants, according to these confidential
7   sources; is that it?
8             MR. JACKSON:  Yes, your Honor.
9             THE COURT:  Well, how is that exculpatory?  And even
10  if it's true, how is it prejudicial to you?
11            MR. JACKSON:  Because, your Honor, we don't believe
12  that those were actually drugs.  We don't believe there is any
13  indication that those were actually drugs.
14            THE COURT:  Well, I don't know that either, but, I
15  mean, your client said that they were drugs.
16            MR. JACKSON:  No, he did not, your Honor.  What he
17  said in his affidavit is that he was provided with the powdery
18  substance.  And the confidential sources, we believe, knew that
19  those were not actually narcotics.  And we expect to
20  demonstrate that in their testimony.
21            THE COURT:  But I thought the defendants were offering
22  the confidential sources samples?
23            MR. JACKSON:  The defendants --
24            THE COURT:  They offered them a material which they
25  said, take a sample from this, correct?

1          MR. JACKSON:  They brought the -- yes, your Honor.
2     They brought the bag of powder to the meeting with the
3     confidential sources.  But the defendants did not know that --
4     this substance to be cocaine.  And our belief, your Honor, is
5     that the confidential sources knew that this was not cocaine.
6     They took a sample, and they destroyed that sample.
7          THE COURT:  And is there language that -- tell me
8     again what the affidavits, what you said in your affidavits
9     about what the contents of the powdery package was.
10         MR. JACKSON:  Yes, your Honor.  Just one moment.
11         Yes, your Honor.  So after the first --
12         THE COURT:  Mr. Jackson, excuse me.  Where are you
13    reading from?
14         MR. JACKSON:  Sorry, your Honor.  What I'm looking at
15    right now is the declaration of Efrain Antonio Campo Flores in
16    support of the defendant's joint motion to suppress evidence on
17    the basis of spoliation.
18         THE COURT:  Okay.
19         MR. JACKSON:  And the initial paragraphs concern some
20    of the earlier discussions with the individual who is known as
21    CW1.  And in those, essentially Mr. Campo Flores asserts that
22    during the course of the meetings that involve 2015, he
23    expressed on a number of occasions that they lacked the
24    capability to procure the cocaine that the informants said that
25    they wanted, and that they had no access to means of

1    transporting drugs, like airplanes.
2             I further explained that we had no knowledge or
3    expertise in coordinating international narcotics trafficking.
4    Indeed, I never shipped drugs from Venezuela to Honduras or any
5    other country.  And I have never seen anything near the amount
6    of drugs the government alleges I was trying to import.
7             That's in paragraph two.
8             Later on, paragraph six, Mr. Campo Flores asserts in
9    or about late October 2015, at the direction of the
10   confidential informants, I brought a block of a white powdery
11   substance to a meeting with confidential informants.  I have no
12   way of knowing what the substance was which was provided to me
13   without cost.  I have no expertise with regard to the
14   appearance or qualities of drugs.  During our meeting, the
15   informants handled the substance with latex gloves and took in
16   their hands a sample of the substance which they claimed had
17   the qualities of high purity cocaine.  They also claimed that
18   they intended to test it.
19            I have reviewed the discovery in this case, and
20   there's no indication that any testing was done of either the
21   latex gloves or any sample of the substance.
22            THE COURT:  So the theory of your spoliation is that
23   the CW supplied the powdery material?
24            MR. JACKSON:  We believe, your Honor, that it is --
25            THE COURT:  And the CSs received it from the hands of

1   one or more of the defendants?

2               MR. JACKSON:  Your Honor -- essentially, your Honor,
3   we believe that the CW1 orchestrated the entire event, the
4   entire stream of events that followed.  The CS's received this
5   and destroyed a sample after receiving it.

6               THE COURT:  Okay.  Do you want to say anything,
7   Mr. Bove?

8               MR. BOVE:  I do, your Honor.

9               First and foremost, I'd like to reiterate a point that
10  we've made in our motion papers, which is that even under the
11  circumstances that were just described, the question here for
12  the spoliation motion is whether that substance in the room at
13  the time had apparent exculpatory value.  In the context of the
14  negotiations that had gone on -- and we recognize there are
15  arguments that the defendants expect to make at trial, but in
16  the context of the negotiations that had gone on, the fact that
17  the defendant's bringing a substance that I think their papers
18  make clear resembled cocaine into that meeting at the time it
19  happened was not in any way exculpatory.  In our view, it's
20  incredibly damning.

21              In any event, there was no obligation of these
22  confidential sources to collect and remove from Venezuela a
23  sample of that evidence, and that they, in fact, did not.  And
24  I think this is one of the ways in which there are arguments
25  presented in the spoliation motions that are very broad, some

1    of which could be resolved without fact finding.  From the
2    government's perspective, this is one of them.  That's my first
3    point.
4            My second, your Honor, is I think it's a very fair
5    question:  What was said in this meeting that gives rise to the
6    factual arguments that were just made by defense counsel?  We
7    have on a number of times over the last few weeks requested the
8    transcript that Mr. Jackson quotes in his declaration in
9    support of this motion.  The defense has declined to provide
10   it.  We think that that is one of the issues or one of the
11   things that would be very helpful, if there is to be fact
12   finding on this question of what happened with the kilo, is to
13   see the transcript and the translation that the defendants are
14   relying on to make this argument that there was apparent
15   exculpatory value to that kilogram or a sample from it in the
16   meeting.
17           THE COURT:  I'm better informed now.  I can rule as we
18   go along.
19           Thank you very much.  See you tomorrow morning.
20           At the end of tomorrow's session, you give me an
21   estimate of how much longer it's going to be and whether we
22   need the full day on Friday or half day on Friday.
23           MR. BOVE:  Yes, your Honor.
24           (Adjourned)
25