UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                    :

UNITED STATES OF AMERICA,          :

      - v. -                            :   S2 15 Cr. 765 (PAC)

EFRAIN ANTONIO CAMPO FLORES and  :
FRANQUI FRANCISCO FLORES DE FREITAS,  :

                Defendants.               :

------------------------------------------------------------X

## DEFENDANTS' MOTION IN LIMINE NO. 4 TO PRECLUDE VARIOUS STATEMENTS MADE BY THE CONFIDENTIAL INFORMANTS AND DEFENDANTS IN THE RECORDINGS

Pursuant to Federal Rules of Evidence 401 and 403, Defendants Efrain Antonio Campo Flores and Franqui Francisco Flores de Freitas (the "Defendants") respectfully move to preclude the admission of certain statements on the recordings made by the Defendants and CS-1 during a meeting in Caracas, Venezuela on October 23, 2015. Those statements, which were instigated by the Government's confidential informants, implicate international relations between the United States and Venezuela in connection with Venezuela's parliamentary elections. These highly politicized statements have no probative value, present a high risk of juror confusion, and will cause great prejudice to the Defendants. For the reasons set forth below the Defendants submit that they should be excluded.

As the suppression hearing made clear, the Government knew that the Defendants were related to the President and first lady of Venezuela prior to dispatching CS-1 and CS-2 to Caracas in late October 2015. *See* H'rg. Tr. (Sept. 8-9, 2016) 203-04 ("A. There were other DEA investigations being carried out at that time that reflected that the defendants, or they were described as the nephews of the president of Venezuela were actively involved in drug

1

trafficking."). At the time of CS-1 and CS-2's arrival, there were Parliamentary elections scheduled for December 2015 in Venezuela. Those elections were discussed among the Defendants, CS-1, and CS-2 during the secretly recorded conversations.

Specifically, at the October 23, 2015 meeting, CS-1 raised the topic of the upcoming elections with the Defendants, stating: "I'll send you a really big check for your mother . . . because right now the campaign is more important, and because if you win the campaign…I'm going to continue working." (Oct. 23, 2015 Gov't Translation ("Tr.") 25-26). CS-1's prompt instigated a discussion concerning the involvement of the United States in the Venezuelan elections. Mr. Campo-Flores explained: "But we need the money. Why? Because the Americans are hitting us hard with money. Do you understand? The opposition is getting an infusion of a lot of money and so, it's also us, that's why we are at war with them." (Tr. 29). Later in the conversation, CS-1 referred to "that internal war you're in with the Americans." (Tr. 55). Further in their discussion Mr. Campo Flores stated, "[w]e are at war with everyone, but we don't let anyone come in here . . . But we're at war with the United States . . . with Colombia . . . with the opposition." (Tr. 57).

These references to "war" by both Mr. Campo Flores and CS-1 address the general perception—certainly in Venezuela, but also elsewhere—that the United States interferes in the political affairs of Venezuela. In sum, Mr. Campo Flores appeared to be telling CS-1 that the United States funnels money to the opposition party in Venezuela, which is viewed as interference with Venezuela's sovereignty (e.g., "war"). That belief is connected to, and entirely consistent with, the hostile relationship between the two countries and the mutual suspicion they share which is regularly reported on in the United States and Venezuelan press. *See, e.g.*, Felicia Schwartz, *Amid Frosty Relations, U.S. Holds Talks with Venezuela*, Wall Street Journal, (June

2

24, 2016), *available at* http://www.wsj.com/articles/amid-frosty-relations-u-s-holds-talks-with-venezuela-1466808231 ("The U.S. and Venezuela tried to set aside years of increasingly testy relations, holding talks this week in Caracas aimed at defusing tensions as the U.S. grows increasingly concerned about an escalating political crisis in the country.").

Because these statements are nothing more than idle political chatter that is irrelevant to the charged conspiracy, these statements are likely to lead to juror confusion and to undue prejudice for the Defendants. Rule 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. In addition, the Second Circuit has instructed that, in criminal cases, the admission of relevant evidence will violate Rule 403 where it "involve[s] conduct more inflammatory than the charged crime." See *United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Because these inflammatory statements will mislead and confuse the jury and unduly prejudice the Defendants they should be excluded.

*First*, any probative value of the statements is overwhelmed by the risk of juror confusion because it will require the jury to unravel the convoluted and tense relationship between the United States and Venezuela. There is a well-documented acrimonious history between the United States and the Venezuelan government starting with the ascent of Hugo Chavez. The bitter relationship has raised numerous factual disputes about each country's interference in the affairs of the other. Those questions include whether the United States interferes with Venezuelan elections, *see* Nacho Doce, *U.S. Denies Interference in Venezuelan Elections*, Newsweek (Dec. 7, 2015), *available at* http://www.newsweek.com/venezuela-us-interference-hugo-chavez-socialism-402382 ("Given the history of acrimony between the United States and

3

Venezuela under former President Hugo Chavez and his successor President Nicolas Maduro, both frequent critics of Washington, the statement might be taken as a form of U.S. interference."), and whether the United States has actually attempted to overthrow the Venezuelan government, *see* William Neuman, *In Venezuela, Surrounded by Dark Plots (Real, or Not)*, N.Y. Times (Sept. 10, 2013), *available at* http://www.nytimes.com/2013/09/11/world/americas/in-venezuela-surrounded-by-dark-plots-real-or-not.html (noting that the Venezuelan president "holds responsible[ ] his political opposition and the United States, which he paints as an imperial enemy bent on subjugating Venezuela," and that "for many Venezuelans, the allegations seem credible, especially because the United States once gave tacit approval for a coup that briefly removed Mr. Chávez from office.").[1] This trial is not the forum to introduce and sort out those deep-seated and highly inflammatory disputes between the two countries.

*Second*, statements from CS-1 or Mr. Campo Flores commiserating that the United States and Venezuela are at "war" will prejudice the Defendants because it will make the Defendants sound to the jury like enemy combatants and foes of the United States.  Courts have long recognized the impropriety of introducing evidence that is prone to inflame the jury because it associates the defendant with a political or foreign enemy of the United States.  *See, e.g.*, *United States v. Bramson*, 139 F.2d 598, 600 (2d Cir. 1943) (the defendant's sister, a lawyer, "was asked

---

[1] Indeed, the relationship between the United States and Venezuela is so strained that only a few weeks ago a popular satirical newspaper in the United States ran a fake article titled *CIA Orchestrates Coup D' Etat to Replace Entire Population of Venezuela*, The Onion (Oct. 6, 2016), available at http://www.theonion.com/article/cia-orchestrates-coup-detat-replace-entire-populat-54118 (ending with the punch-line, "[a]t press time, sources confirmed the new Venezuelan populace had already grown displeased at the United States meddling in their affairs and had cut off all communication with Washington.").

by government counsel whether she represented 'a great many Communists' . . . and 'Are you a Communist?,'" which the Second Circuit held was "of course, improper.").

While there is no blanket prohibition against introducing evidence of this type of political and foreign conflict, the Second Circuit has been clear that the probative value of such evidence must be carefully weighed against its prejudicial effect. *See United States v. Royer*, 549 F.3d 886, 903 (2d Cir. 2008) ("Royer's illicit efforts to find out whether Elgindy was under investigation and his discovery, unlawfully conveyed to Elgindy, that Elgindy was suspected of having advance knowledge of the 9/11 attacks, was directly relevant to the obstruction and racketeering charges, among others."). The Second Circuit explained that the "district court engaged in precisely the sort of 'conscientious assessment' that our precedents require. It carefully weighed the probative value of the 9/11–related evidence the Government wished to offer" and "excluded that evidence that was more potentially prejudicial than probative (such as references to Al Qaeda)." *Id.* (internal citations omitted).

Here, however, there is no probative value to the "at war" statements on the recording. That is because those statements have nothing to do whatsoever with the charged crime—an alleged scheme to import narcotics into the United States. Put differently, the Defendants' belief that the United States interferes with Venezuelan politics is wholly irrelevant to whether they were knowingly and intentionally involved in a narcotics conspiracy. Moreover, the "at war" statements are easily excisable from the remainder of the conversation and the Government will still be able to utilize the vast majority of the recording. Introducing these statements, as the Government has indicated it intends to do, yields only *de minimis* probative value. And whatever minimal probative value is present will be overwhelmed by both the prejudice of depicting the Defendants as enemy combatants against the United States and the confusion to the

jury arising from the complex and hostile relationship between the two countries, which would be necessary to explain what those statements actually mean.

In addition to the "at war" statements, there is another portion of the recording that the Government is seeking to introduce that should also be excluded. The discussion set forth below has been translated by the Government and, even at a glance, it is incomprehensible. Nonetheless, it appears that the Government may seek to introduce it as evidence of alleged misconduct on the part of the Defendants. The relevant portion of the transcript is as follows:

| | |
|---|---|
| CS-2: | In Mexico [U/I]... |
| | // [U/I] |
| CAMPO: | I'll [U/I] for you. |
| | // [U/I] |
| CAMPO: | We put them in jail over here. |
| CS-2: | I send them an order of [U/I]... |
| CAMPO: | No, here... |
| CS-2: | ... [U/I]. |
| CAMPO: | ... we send them to jail for fifteen years. |
| CS-2: | [U/I] to me [U/I]... |
| CAMPO: | [U/I]. |
| CS-2: | ... [U/I]. |
| CAMPO: | [Laughs] |
| CS-2: | I [U/I]. [Laughs] |

(Tr. 27). As is clear from the transcript, almost all of the exchange is unintelligible and, therefore, of no probative value. Nevertheless, the few interspersed translated words carry a high risk of unfair prejudice to the Defendants.

It appears that the Government interprets this statement to suggest that the Defendants and the Venezuelan government imprison their political opposition. That interpretation is entirely unsupported by the actual transcript, which offers no guidance as to what they are actually referring to, and for that reason alone it should be excluded. In any event, even if that interpretation were to be credited (and it should not be), it would constitute highly prejudicial Rule 404(b) "other acts" evidence that has no connection to this case at all (and for which the Government has provided no notice). The Government's interpretation would clearly be more inflammatory than the charged crime and, for all the reasons set forth above, this portion of the conversation should be excluded. *See Livoti*, 196 F.3d at 326.

## CONCLUSION

For all the foregoing reasons, this Court should grant Defendants' Motion *in Limine* No. 4 to exclude certain inflammatory and prejudicial statements of the Defendants.

Dated: October 20, 2016
New York, New York

        Respectfully Submitted,

        /s/ Randall W. Jackson
        _____
Randall W. Jackson
John T. Zach
Joanna C. Wright
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone:   (212) 446–2300
Facsimile:   (212) 446–2350

*Attorneys for Defendant Efrain Antonio Campo Flores*


        /s/ David M. Rody
        _____
David M. Rody
Michael D. Mann
Elizabeth A. Espinosa
SIDLEY AUSTIN LLP
787 Seventh Avenue
New York, New York 10019
Telephone:   (212) 839–5300
Facsimile:   (212) 839–5599

*Attorneys for Defendant Franqui Francisco Flores de Freitas*

8