GBI9FLO1                        Trial

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x
     UNITED STATES OF AMERICA,
 3
                 v.                        15 Cr. 765 (PAC)
 4
     EFRAIN ANTONIO CAMPO FLORES and
 5   FRANQUI FRANCISCO FLORES DE FREITAS,
 6                 Defendants.
     ------------------------------x
 7
                                           New York, N.Y.
 8                                         November 18, 2016
                                           9:43 a.m.
 9   Before:
10                      HON. PAUL A. CROTTY,
11                                            District Judge
12                            APPEARANCES
13   PREET BHARARA
          United States Attorney for the
14        Southern District of New York
     EMIL J. BOVE III
15   BRENDAN F. QUIGLEY
          Assistant United States Attorneys
16
     BOIES, SCHILLER & FLEXNER LLP
17        Attorneys for Defendant Campo Flores
     RANDALL W. JACKSON
18   JOHN T. ZACH
     JOANNA CHRISTINE WRIGHT
19
     SIDLEY AUSTIN LLP
20        Attorneys for Defendant Flores de Freitas
     DAVID M. RODY
21   ELIZABETH A. ESPINOSA
     MICHAEL D. MANN
22
     ALSO PRESENT:
23
     ERIKA DE LOS RIOS
24   MIRTA HESS
     Spanish Interpreters
25
```

1    (Trial resumed; jury not present)

2    THE COURT:  Good morning.  Marlon, are they all set?

3    THE DEPUTY CLERK:  Yes, sir.

4    (Jury present)

5    THE COURT:  Good morning.  Please be seated.

6    I am now going to give your the instructions on the

7    law divided into four parts, general principles, evidence,

8    substantive law and conclusion.

9    As I told you at the beginning how important your

10   service is to our country and to our system of justice.  You

11   have been most conscientious, as the lawyers for the parties

12   have noted in their closing arguments, both in your attendance,

13   in your punctuality, and the complete attention that you have

14   given during the trial.

15   I'm going to read these instructions to you now, but I

16   want you to know that I am going to send the instructions into

17   the jury room.  So you don't have to take notes as you listen.

18   Please don't single out any particular instruction as

19   alone stating the law; you should instead consider my

20   instructions as a whole.

21   As you begin your deliberations now, you have heard

22   all of the evidence, as well as the final arguments of the

23   lawyers for the parties.  Now it is my duty to instruct you as

24   to the law that will govern your deliberations.  As I told you

25   at the start of the case, and as you agreed, it is your duty to

1    accept my instructions on the law and to apply the instructions

2    on the law to the facts as you determine them.

3         Regardless of any opinion that you may have had as to

4    what the law may be or ought to be, it is your sworn duty to

5    follow the law as I give it to you.  Also, if any attorney or

6    other person has stated a legal principle different from any

7    that I state to you in my instructions, it is my instructions

8    that you must follow.  You will begin your deliberations after

9    these instructions.

10        Your duty is to decide the factual issues in this case

11   and arrive at a verdict.  The jury is the sole and exclusive

12   judge of the facts.  You decide the weight of the evidence; you

13   determine the credibility of the witnesses; you resolve such

14   conflicts as there may be in the testimony; and you draw

15   whatever favorable -- reasonable inferences you decide to draw

16   from the facts as you determine them.

17        In determining the facts, you must rely upon your own

18   recollection of the evidence.  None of what the lawyers have

19   said in their opening statements, closing arguments, questions,

20   or objections is evidence.  They are not sworn as evidence;

21   they do not testify; they make arguments about what conclusions

22   you should draw from evidence or the lack of the evidence.  But

23   as I said, that is argumentation, not evidence.  And the same

24   applies to me; anything I have said is not evidence.  I have

25   allowed you to take notes, but as I said earlier, your notes

GBI9FLO1                    Charge

1    are not evidence.

2              The evidence consists -- before you consists of just

3    two things:  The testimony given by witnesses that was received

4    in evidence and the exhibits that were received in evidence.

5              Testimony consists of the answers that were given by

6    the witnesses to the questions that were permitted.  The

7    questions themselves are not evidence.  It is the answers to

8    the questions that count.  Also, as I instructed you at the

9    beginning of this case, and I am sure you complied with my

10   instructions, anything you may have heard or seen about this

11   case outside the courtroom is not evidence and must be entirely

12   disregarded.

13             Now, it is the duty of the attorneys for each party to

14   object when the other party offers testimony or other evidence

15   that the attorney believes is not properly admissible.  Counsel

16   have the right and duty to ask for the Court to make rulings of

17   law and to request conferences out of the hearing of the jury.

18   All such questions of law have to be decided by me.  You should

19   not allow -- you should not show -- excuse me.  You should not

20   show any prejudice against any attorney or party because the

21   attorney objected to the admissibility of evidence, or asked

22   for a conference out of your hearing, or asked me for a ruling

23   on the law.

24             The testimony and documents that have been admitted

25   into evidence are appropriate for your consideration.  You may

1    consider all the evidence that has been admitted.

2         I also ask you to draw no inference from my rulings or

3    from the fact that upon occasion I asked questions of certain

4    witnesses or said something.  My rulings were no more than

5    applications of the law, and my questions were only intended

6    for clarification or to expedite matters.  You are to expressly

7    understand that I have no opinion as to what your verdict

8    should be in this case.

9         Now, you are to perform your duties of finding the

10   facts without bias or prejudice to any party.  You are to

11   perform your duty with an attitude of complete fairness and

12   impartiality.  This case is important to the parties.

13   Mr. Campo Flores and Mr. Flores de Freitas are charged with a

14   serious crime.  They have pleaded not guilty.  It's important

15   to the government, too; enforcement of the criminal laws is a

16   primary concern of our government.

17        The fact that the prosecution is brought in the name

18   of the United States of America entitles the government to no

19   greater consideration than that accorded to any other party.

20   By the same token, it is entitled to no less consideration.

21   All parties, whether the government or individuals, stand as

22   equals before the Court.

23        It would be improper for you to consider, in reaching

24   your decision as to whether the government sustained its burden

25   of proof, any personal feelings you may have about Mr. Campo

GBI9FLO1                    Charge

Flores and Mr. Flores de Freitas, their race, their religion,

their national origin, their gender, sexual orientation, or

age.  Similarly, it would be improper for you to consider any

personal feelings you may have about the race, religion,

national origin, gender, sexual orientation or age of any

witness or anyone else involved in the case.  Each defendant is

entitled to the presumption of innocence and the government has

the burden of proof, as I will discuss in more detail in a

moment.  It would be equally improper for you to allow any

feelings you might have about the nature of the crime charged

to interfere with your decision-making process.

          Do not be swayed by sympathy.  Rather, the crucial

question that you must ask yourselves as you review the

evidence is:  Has the government proved the guilt of each of

Mr. Campo Flores and Mr. Flores de Freitas beyond a reasonable

doubt?

          You cannot let bias, prejudice, fear, disgust,

sympathy, or any other irrelevant consideration interfere with

your thinking.  That might interfere with your obligation to

arrive at a true and just verdict.  So do not be guided by

anything except clear thinking and calm analysis of the

evidence.  Sympathy should play no role in your determination.

          You should not -- you should also not consider any

personal feelings you may have about the attorneys who

represented the parties in this matter.  As I indicated at the

1    beginning of the trial, the lawyers and the other participants

2    at the counsel table have been instructed not to have

3    communication with you as jurors.  If due to the congestion in

4    the courthouse you ran into counsel and they ignored you, they

5    did so because they were supposed to ignore you.  That's the

6    rule.  This should not influence your decision regarding

7    Mr. Campo Flores' or Mr. Flores de Freitas' innocence or guilt

8    in any way.

9            Now the potential punishment of the two defendants is

10   not a jury concern and should not, in any sense, enter into or

11   influence your deliberations.  The duty of imposing a sentence

12   rests exclusively with the Court.  Your function is to weigh

13   the evidence, or the lack of evidence, in the case and to

14   determine whether or not the government has proved that

15   Mr. Campo Flores, Mr. Flores de Freitas, or both are guilty

16   beyond a reasonable doubt.

17           I told you before -- and I am going to tell you

18   again -- Mr. Campo Flores and Mr. Flores de Freitas are

19   presumed innocent until proven guilty beyond a reasonable

20   doubt.  Mr. Campo Flores and Mr. Flores de Freitas have pleaded

21   not guilty to the charges alleged in the indictment.  As a

22   result, the government has the burden to prove each defendant's

23   guilt beyond a reasonable doubt.  This burden never shifts from

24   the government to Mr. Campo Flores or Mr. Flores de Freitas for

25   the simple reason that the law presumes each defendant is

innocent and never imposes upon any defendant in a criminal

case the burden or the duty of calling any witnesses or

producing any evidence.

         In other words, the defendants, Mr. Campo Flores and

Mr. Flores de Freitas, start with a clean slate.  They are

presumed innocent until such time that you the jury are

unanimously satisfied that the government has proved

Mr. Campo Flores, Mr. Flores de Freitas, or both guilty beyond

a reasonable doubt.  If the government fails to sustain this

burden with respect to either Mr. Campo Flores or

Mr. Flores de Freitas, or both, you must find either of them,

or both of them, not guilty.

         Now what is the standard of proof?  You heard this a

little bit yesterday during the summations of the parties.  The

government must prove each defendant guilty beyond a reasonable

doubt.  The question then is:  What is a reasonable doubt?

Well, the words almost define themselves.  It is a doubt based

upon reason.  It is a doubt that a reasonable person has after

carefully weighing all of the evidence.  Proof beyond a

reasonable doubt must, therefore, be proof of such a convincing

character that a reasonable person would not hesitate to rely

and act upon it in the most important of his or her own

affairs.

         A reasonable doubt is not a guess or a whim; it is not

speculation or suspicion.  It is not an excuse to avoid the

1    performance of an unpleasant duty, and it's not sympathy.  The

2    law does not require that the government prove guilt beyond all

3    possible doubt; proof beyond a reasonable doubt is sufficient

4    to convict.

5         If, after a fair and impartial consideration of all of

6    the evidence, you have a reasonable doubt as to the guilt of

7    Mr. Campo Flores, Mr. Flores de Freitas, or both, it is your

8    duty to find the defendant you are considering not guilty.  On

9    the other hand, if after a fair and impartial consideration of

10   all the evidence, you are satisfied that the government has met

11   its burden of proving Mr. Campo Flores', Mr. Flores de Freitas'

12   or both defendants' guilt beyond a reasonable doubt, it is your

13   duty to find that defendant or both defendants guilty.

14        Now that finishes my instructions on general

15   principles.

16        Let me turn now to some observations about evidence.

17        The defendants, Mr. Campo Flores and

18   Mr. Flores de Freitas, were formally charged in an indictment.

19   They are entitled to know the charges against them.  But, as I

20   instruct you when the trial started, the indictment is not

21   evidence.  It merely describes the charges against

22   Mr. Campo Flores and Mr. Flores de Freitas, and may not be

23   considered by you as any evidence of guilt.  You are to give no

24   weight to the fact that a grand jury properly returned an

25   indictment against Mr. Campo Flores and Mr. Flores de Freitas.

GBI9FLO1                    Charge

             I am not going to read the indictment to you.  It's

short, but I will provide you a copy in the jury room.

             In deciding whether Mr. Campo Flores, or

Mr. Flores de Freitas, or both are guilty or not guilty, you

may consider both direct evidence and circumstantial evidence.

             Direct evidence is evidence that proves a disputed

fact directly.  For example, when a witness testifies to what

he saw or she saw, heard, or observed, that is called direct

evidence.

             Circumstantial evidence is evidence that tends to

prove a disputed fact by proof of other facts.  Let me give you

a simple example.  Suppose that when you came into the

courthouse today the sun was shining, as it was, and it was a

nice day.  But now the courtroom blinds are drawn.  You can't

look outside.  As you sit here, someone walks in with a

dripping wet umbrella.  And soon after someone else comes into

the courtroom with a dripping wet raincoat.  Now in our assumed

facts you cannot look outside the courtroom and see whether or

not it is raining.  So you have no direct evidence of that

fact.  But on the combination of the facts about the umbrella

and the raincoat it would be reasonable for you to conclude

that it had started to rain outside.  That is all there is to

circumstantial evidence.  Using your reason and experience, you

infer from established facts the existence or the nonexistence

of some other fact.

1          An inference is the deduction or conclusion that

2    reason and common sense prompt a reasonable mind to draw from

3    the facts that have been proven by the evidence.  Not all

4    logically possible conclusions are legitimate or fair

5    inferences.  Only those inferences to which the mind is

6    reasonably led or directed are fair inferences from direct or

7    circumstantial evidence in this case.  Whether or not to draw a

8    particular inference is, of course, a matter exclusively for

9    you to decide, as are all determinations of fact.

10         Many material facts, such as state of mind, are rarely

11   susceptible to proof by direct evidence.  There is no way for

12   us to look into people's minds, so those facts are established

13   by circumstantial evidence and the inferences the jury draws

14   from them.  The law makes no distinction between direct and

15   circumstantial evidence.  Circumstantial evidence is of no less

16   value than direct evidence, and you can consider either or

17   both, and give them such weight as you conclude is warranted.

18         Now, a word or two about witness credibility.  It has

19   to be clear to you by now that counsel for the parties are

20   asking you to draw very different conclusions about the

21   significant factual issues in this case.  An important part of

22   your decision will involve making judgments about the testimony

23   of the witnesses you have listened to and observed.  In making

24   these judgments, you should carefully scrutinize all of the

25   testimony of each witness, the circumstances under which each

witness testified, and any other matter in evidence that may

help you to decide the truth and the importance of each

witness's testimony.  For example, was the testimony of a

witness corroborated by the testimony of another witness, or

another exhibit, or a recording which was received in evidence?

Your decision whether or not to believe a witness may

depend upon how the witness impressed you.  Was the witness

candid, frank, and forthright; or did the witness seem to be

evasive or suspect in some way?  How did the witness testify on

direct examination compared with how the witness testified on

cross-examination?  Was the witness consistent or

contradictory?  Did the witness appear to know what he or she

was talking about?  Did the witness strike you as someone who

was trying to report his knowledge accurately?  What was the

witness's demeanor like?  These are examples of the kinds of

common sense questions you should ask yourselves in deciding

whether a witness is or is not truthful.

In addition, you may consider whether a witness had

any possible bias or relationship with a party, or any possible

interest in the outcome of the case.  Such a bias,

relationship, or interest does not necessarily make the witness

unworthy of belief.  They are simply factors that you may

consider.

In making a determination of witness credibility, you

may consider whether the witness purposely made a false

statement or whether it was an innocent mistake.  You may also
consider whether an inconsistency concerns an important fact or
merely a small detail, as well as whether the witness had an
explanation for the inconsistency, and if so, whether that
explanation appealed to your common sense.  If you find that
the witness has testified falsely as to any material fact, you
may reject the witness's testimony in its entirety, or you may
accept those parts that you believe to be truthful or that are
corroborated by other independent evidence in this case.
Further, you may consider whether a witness has been previously
untruthful, including lying under oath in another proceeding,
in determining how much of his or her testimony, if any, you
wish to believe.

        You should also consider whether the witness had an
opportunity to observe the facts the witness testified about;
whether the witness was under any influence of any substance
when the event was observed and what impact that might have had
on the witness's recollection or perception of the events, and
whether the witness's recollection of the facts stands up in
light of all of the other evidence in this case.

        In other words, what you have to try to do in deciding
credibility is to size up a person just as you would in any
important matter where you are trying to decide if a person is
truthful, straightforward, and accurate in his or her
recollection.

GBI9FLO1                    Charge

1            Now, a word about the preparation of witnesses.  You

2    have heard evidence during the trial that witnesses have

3    discussed the facts of the case and their testimony with

4    lawyers before witnesses appeared in court.  You may consider

5    that fact when you are evaluating a witness's credibility; but

6    there is nothing either unusual or improper about a witness

7    meeting with lawyers before testifying so that the witness can

8    be aware of all of the subjects that will be covered; focus on

9    those subjects, and have the opportunity to review the relevant

10   exhibits and documents before being questioned about them.

11   Such consultations help conserve your time and the Court's

12   time.  The weight you give to the fact or -- the weight you

13   give to the fact or the nature of the witness's preparation for

14   his or her testimony and what inferences you draw from such

15   preparation are matters completely within your discretion.

16           It is for you, the jury, and you alone not the

17   lawyers, or the witnesses, or me as the Judge, to decide the

18   credibility of witnesses who have appeared here and the weight

19   that their testimony deserves.  After making your own judgment

20   or assessment concerning the credibility of a witness, you can

21   then attach such importance or weight to his or her testimony,

22   if any, that you feel it deserves.  You will then be in a

23   position to decide whether the government has proved the

24   charges beyond a reasonable doubt.

25           Now that's the general instruction on credibility.

1    But we've had a number of witnesses, law enforcement witnesses,

2    experts, and cooperating witnesses and there's issues you have

3    to consider with respect to each of those categories of

4    witnesses.

5            With respect to law enforcement witnesses, you have

6    heard testimony from a number of law enforcement officials.

7    You have also heard testimony from a confidential source, Juan

8    Gomez.  Mr. Gomez receives compensation and rewards from the

9    DEA in connection with his testimony.  The government's law

10   enforcement witnesses and confidential source witnesses do not

11   deserve any more or less consideration, or greater or lesser

12   weight than that of any other witness.  In this context, it is

13   appropriate for defense counsel to try to attack the

14   credibility of such witnesses on the ground that his testimony

15   may be colored by personal or professional interest in the

16   outcome of the case.

17           It is up to you to accept or reject the testimony of

18   each law enforcement witness and of the confidential source;

19   and to give such testimony the weight, if any, you find it

20   deserves.

21           You've also heard from expert witnesses.  Ms. Maria

22   Elena Alvarado, Mr. Henry Rugeles, Special Agent Daniel

23   Mahoney, and Mr. Daniel Ogden.  An expert is someone who by

24   education or experience has acquired learning or experience in

25   a science or a specialized area of knowledge.  Here the

1    specialized areas were translation of Spanish into English;

2    drug trafficking routes used to move cocaine from South and

3    Latin America; and mobile devices.  The expert witnesses were

4    allowed to testify as to what the Spanish spoken and written

5    words meant in English; the routes and methods to move cocaine

6    from South and Latin America; and the examination of data from

7    two mobile devices.

8            Your role in judging credibility applies to experts as

9    well as to other witnesses.  You should consider the expert

10   opinions that were received in evidence in this case and give

11   them as much or as little weight as you think they deserve.  If

12   you should decide that the opinion of an expert was not based

13   on sufficient education or experience or on sufficient data, or

14   if you should conclude that the trustworthiness or credibility

15   of an expert is questionable for any reason, or if the opinion

16   of the expert was outweighed in your judgment by other evidence

17   in this case, then you must disregard the opinion of the expert

18   entirely or in part.

19           If, however, you find the opinion of an expert is

20   based on sufficient data, education and experience, and the

21   other evidence does not give you reason to doubt the expert's

22   conclusions, you would be justified in relying on that expert's

23   testimony.

24           Now a word or two about cooperating witnesses.

25           Let me say a few things that you may want to consider

GBI9FLO1                        Charge

1    during your deliberations on the subject of what we'll call

2    cooperating witnesses.

3          You have heard the testimony from two cooperating

4    witnesses:  Jose Santos Peña, also known as Jose, Sr. or CS-1,

5    and Carlos Gomez, the air traffic controller from Roatan

6    Airport in Honduras.  They testified that they pled guilty to a

7    variety of criminal conduct, including with respect to Jose

8    Santos Peña, CS-1, lying to the government.  The law permits

9    the use of testimony from cooperating witnesses.  The

10   government frequently must use such testimony in a criminal

11   prosecution.  I instruct you that you are to draw no conclusion

12   or inference of any kind about the guilt of defendants on trial

13   from the fact that certain prosecution witnesses pled guilty to

14   charges relating to or similar to the crimes charged in this

15   case.  Those witnesses' decisions to plead guilty were personal

16   decisions that they made about their own guilt.  They may not

17   be used by you in any way as evidence against or unfavorable to

18   the defendants on trial here.

19         Because of the possible interest a cooperating witness

20   may having in testifying, let me say a few things that you may

21   want to consider during your deliberations on the subject of

22   cooperating witnesses.  Cooperating witness testimony must be

23   scrutinized with special care and caution.  The cooperating

24   witnesses are facing fairly long maximum sentences, and are

25   hoping for a reduced sentence.  For those witnesses, the

government decides whether to file a motion for a reduced

sentence, that is what they call a 5K1 letter that has been

mentioned here.  And 5K1, it's really contained in this book on

sentencing guidelines.  It's called 5K1 because the regulations

dealing with this topic appear at 5K1 in the notebook.  So the

5K1 letter allows the sentencing court, according to its own

determination, decide what sentence to impose.  It does not

follow, however, that simply because a person has admitted

participation in one or more crimes, he is not capable of

giving a truthful version of what happened.  But the

cooperating witness might be motivated by reward or personal

gain.  Would the cooperator gain more by lying or telling the

truth?

I must caution you that it is no concern of yours why

the government made the agreements with these witnesses.  Your

sole concern is to decide whether the witnesses have given

truthful testimony in the case before you.

Cooperating witness testimony should be given such

weight as it deserves in light of the facts and circumstances

before you, taking into account the witness's demeanor, candor,

the strength and accuracy of the witness's recollection, the

witness's background, and the extent to which the testimony is

or is not corroborated by other evidence.  You can also

consider the fact that the government told Jose Santos Peña,

CS-1, after he testified at length, that he would not receive a

1    5K1 letter because he had lied.  You may take that into

2    consideration in your assessment of this witness's credibility.

3    And you are quite free to reject all or any part of his

4    testimony.

5         Obviously, you should reject any other testimony, if

6    you find that it was false.  If you are satisfied that the

7    testimony is true, you should accept it.  You may also accept

8    parts and reject parts of the cooperating witness's or of any

9    witness's testimony.

10        In sum, you should look to all of the evidence in

11   deciding what credence and what weight, if any, to give to a

12   witness's testimony.

13        Now, Mr. Campo Flores and Mr. Flores de Freitas did

14   not testify in this case.  Under our Constitution, a defendant

15   has no obligation to testify or present any evidence, because

16   it is the government's burden to prove guilt beyond a

17   reasonable doubt.  That burden remains with the government

18   throughout the entire trial and never shifts to a defendant.  A

19   defendant is never required to prove that he is innocent.

20        You must not attach any significance to the fact that

21   Mr. Campo Flores and Mr. Flores de Freitas did not testify.  No

22   adverse inference against Mr. Campo Flores or

23   Mr. Flores de Freitas may be drawn by you because they did not

24   take the witness stand.  You may not consider this against

25   either Mr. Campo Flores or Mr. Flores de Freitas in any way in

GBI9FLO1                    Charge

1    your deliberations in the jury room.

2          Now there has been evidence that Mr. Campo Flores and

3    Mr. Flores de Freitas made certain factual admissions to

4    Special Agent Sandalio Gonzalez during the flight from Haiti to

5    Westchester on November 10, 2015.  For example, there are notes

6    of the defendants' statements that Special Agent Gonzalez

7    testified he took contemporaneously.  There are also

8    typewritten reports of the defendants' statements, dated three

9    and six days after the flight, that Special Agent Gonzalez

10   testified he prepared.  There are no audio recordings or audio

11   visual recordings of the defendants' statements; Special Agent

12   Gonzalez testified that he did not record them.

13         Now evidence of these statements was properly admitted

14   in this case, and may be considered by you.  You are to give

15   the evidence of such statements such weight as you feel it

16   deserves in light of the evidence.  Whether you approve or

17   disapprove of the use of these statements may not enter your

18   deliberations.  I instruct you that no one's rights were

19   violated and that the government's use of this evidence is

20   entirely lawful.

21         I must emphasize that the evidence of

22   Mr. Campo Flores' statements to the authorities after his

23   arrest about his own conduct may not be considered or discussed

24   by you in any way with respect to Mr. Flores de Freitas.

25   Similarly, the evidence of Mr. Flores de Freitas' statements to

GBI9FLO1                    Charge

1    the authorities after his arrest about his own conduct may not

2    be considered or discussed by you in any way with respect to

3    Mr. Campo Flores.

4            Now some of the people who may have been involved in

5    the events leading to this trial are not on trial here.  This

6    does not matter.  There is no requirement that all members of a

7    conspiracy be charged and prosecuted or tried together in the

8    same proceeding.

9            You may not draw any inference, favorable or

10   unfavorable, towards the government or the defendants from the

11   fact that certain persons other than the defendants were not

12   named as defendants in the indictment.  Do not speculate as to

13   the reasons why other persons were not named.  These matters

14   are wholly outside your concern and have no bearing on your

15   function as jurors.

16           Whether a person should be named as a coconspirator or

17   indicted as a defendant in this case or another separate case

18   is a matter within the sole discretion of the United States

19   Attorney and the grand jury.  Therefore, you may not consider

20   it in any way in reaching your verdict as to the two

21   defendants.

22           There are several people whose names you have heard

23   during the course of the trial who did not appear here to

24   testify.  I instruct you that each party had an equal

25   opportunity, or lack of opportunity, to call any of these

witnesses.  Therefore, you should not draw any inferences or
reach any conclusions as to what they would have testified to
had they been called.  Their absence should not affect your
judgment in any way.

You should, however, remember my instruction that the
law does not impose on a defendant in a criminal case the
burden or duty of calling any witness or producing any
evidence.  The burden remains with the government to prove the
guilt of a defendant beyond a reasonable doubt.

You have heard reference, in the arguments of defense
counsel in this case, to the fact that certain investigative
techniques were used and that others were not used by the
government.  But the issue is not whether the best or the most
scientifically advanced method of proof is used for a
particular fact, but whether the method of proof selected
establishes the fact beyond a reasonable doubt.  There is no
legal requirement that the government prove its case by any
particular means.  You should carefully consider the evidence
adduced by the government.  You are not to speculate as to why
they used the techniques they did or why they did not use other
techniques.  The government is not on trial.  Law enforcement
techniques are not our concern here.

Your concern is to determine whether or not based on
the evidence or lack of evidence here in this case, the guilt
of Mr. Campo Flores, Mr. Flores de Freitas, or both have been

GBI9FLO1                    Charge

1     proved beyond a reasonable doubt.

2              You have heard evidence that law enforcement officials

3     recovered certain evidence during certain searches.  This

4     evidence was properly admitted in this case, and may properly

5     be considered by you.  Whether or not you approve or disapprove

6     of how the evidence was obtained should not enter into your

7     deliberations.  I instruct you that the government's use of the

8     evidence is entirely lawful.  Regardless of your personal

9     opinions, you may give this evidence full consideration along

10    with all the other evidence in this case in determining whether

11    the government has proved the guilt of Mr. Campo Flores,

12    Mr. Flores de Freitas, or both beyond a reasonable doubt.

13             Now with regard to the translations.  Recordings of

14    various Spanish conversations as well as Spanish electronic

15    communications have been admitted into evidence.  The Spanish

16    words were written down and then translated from Spanish into

17    English.  We have listened to Spanish recordings where the

18    English translations were read.  First, whether you approve or

19    disapprove of the recordings or interceptions of those

20    conversations may not enter your deliberations.  I instruct you

21    that these recordings were made in a lawful manner, that no

22    one's rights were violated, that the government's use of this

23    evidence is entirely lawful, and that it was properly admitted

24    into evidence at this trial.  You may, therefore, regardless of

25    any personal opinions, give this evidence full consideration

GBI9FLO1                    Charge

1    along with all of the other evidence in this case in

2    determining whether the government has proved beyond a

3    reasonable doubt the guilt of each of these defendants.

4            I also instruct you that it is the English translation

5    of the confessions reflected on those transcripts that is the

6    evidence.  Ms. Alvarado and Mr. Rugeles, who were qualified as

7    experts, translated the Spanish into English.  The English

8    translations are the testimony of the two experts who testified

9    about the creation of the translations, and you may accept or

10   reject the translations themselves, in whole or in part.  You

11   should not, however, substitute your own understanding of

12   Spanish for that of any of the translation that was admitted in

13   evidence; you must accept or reject the Spanish into English

14   translations in whole or in part without regard to your own

15   understanding of Spanish.

16           If you wish to hear or see any of the recordings

17   again, or see any of the transcripts of the Spanish-language

18   recordings or electronic communications, they will be made

19   available to you during your deliberations.

20           We have, among the exhibits received in evidence, some

21   documents that are redacted.  Redacted means that part of the

22   document was taken out or blacked out.  You are to concern

23   yourself only with the part of the item that has been admitted

24   into evidence.  You should not consider any possible reasons or

25   explanations why the other part of the document has been

GBI9FLO1                          Charge

1    deleted.

2          The government has presented charts and summaries.

3    You remember Mr. Calabrese.  In understanding the evidence

4    which you have heard, it can be easier and more convenient to

5    utilize charts and summaries than to place all of the documents

6    in front of you.  It is for you to decide whether the charts

7    and summaries correctly present the information contained in

8    the testimony and in the exhibits on which they are based.  The

9    headings and titles on the charts and summaries are not

10   evidence, and the charts and summaries are not direct,

11   independent evidence; they are summaries of the evidence.  They

12   are admitted into evidence as aids to you.  To the extent that

13   the charts and summaries conform to what you determine the

14   underlying evidence to be, you may consider them if you find

15   that they are of assistance to you in analyzing and

16   understanding the evidence.

17         Now during the trial you may have heard the attorneys

18   use the term inference or infer.  In their arguments they have

19   asked you to infer, on the basis of your reason, experience,

20   and common sense, from one or more established facts, the

21   existence of some other fact.

22         An inference is not a suspicion or a guess.  It is a

23   logical factual conclusion that you might reasonably view from

24   other facts that have been proved.  In drawing inferences, you

25   should exercise your common sense.

GBI9FLO1                    Charge

1              So, while you are considering the evidence presented

2     to you, you are permitted to draw, from the facts that you find

3     to be proved, such reasonable inferences as would be justified

4     in light of your experience.

5              There are occasions when particular established facts,

6     whether proved circumstantially or directly, might yield an

7     inference in one direction or in the opposite direction.  The

8     government might ask you to draw one inference.  The defendants

9     may say, well, the same facts point in the opposite direction;

10    you should draw the other inference.  You are the ones who make

11    up your minds about what, if any, inferences to draw, nobody

12    else; not me and not the lawyers.

13             Here, again, let me remind you that, whether based on

14    direct or circumstantial evidence, or on the logical reasonable

15    inferences drawn from such evidence, you must be satisfied of

16    the guilt of a defendant beyond a reasonable doubt before you

17    may convict him.

18             Now you have heard evidence in the form of

19    stipulations of testimony.  A stipulation of testimony is an

20    agreement among the parties that, if called as a witness, the

21    person would have given certain testimony.  You must accept as

22    true the fact that the witness would have given that testimony.

23    It is up to you, however, to determine the effect to be given

24    that testimony.

25             You have also heard evidence in the form of

1  stipulations of fact.  A stipulation of fact is an agreement

2  among the parties that a certain fact is true.  You must regard

3  that such agreed facts are true.  It is for you, however, to

4  determine the effect to be given to any stipulated fact.

5      That ends my instructions on evidence.  Let me turn

6  you now to a discussion of the substantive law.

7      As you begin your deliberations you will receive

8  copies of the indictment.  Let me remind you again the

9  indictment is simply a charge or an accusation.  It's not

10  evidence.

11      The indictment before us contains one count.  Count

12  One charges each defendant with the crime of conspiracy to

13  import cocaine into the United States and to manufacture or

14  distribute cocaine, knowing and intending that it would be

15  imported into the United States.  Although there are facts in

16  common to both defendants, you must, as a matter of law,

17  consider each defendant separately, and you must return a

18  separate verdict as to each defendant.  In reaching your

19  verdict, bear in mind that guilt is personal and individual.

20  Your verdict of guilty or not guilty must be based solely upon

21  the evidence about each defendant.  The case against each

22  defendant stands or falls on the proof or lack of proof against

23  that defendant alone, and your verdict as to one defendant

24  cannot control your decision as to the other defendant.

25      During the trial, the lawyers for the defendants have

GBI9FLO1                    Charge

consulted with each other, and have shared some of the work of
the trial in an effort to avoid duplicating one another's work.
The fact that the lawyers have consulted and cooperated with
each other during the course of the trial should not be
considered by you as having any significance to any issues in
this case.  In fact, it would be wasteful of time and effort if
counsel did not share the burden of the defense.

Now Count One of the indictment charges that from at
least in or about August of 2015 up to and including about
November 2015 Mr. Campo Flores and Mr. Flores de Freitas
conspired to import five kilograms and more of cocaine into the
United States and to manufacture or distribute five kilograms
and more of cocaine, intending and knowing that it would be
imported into the United States.  As we know, Mr. Campo Flores
and Mr. Flores de Freitas have denied that they are guilty of
those charges.  The defendants are not charged with and are not
on trial for committing any crimes other than the conspiracy
contained in Count One of the indictment.

You will note that the indictment alleges that certain
acts occurred on or about various dates.  I instruct you that
it does not matter if a specific event is alleged to have
occurred on or about a certain date or month but the testimony
indicates that, in fact, it was a different date or month.  The
law requires only a substantial similarity between the dates
and months alleged in the indictment and the dates and months

GBI9FLO1                          Charge

1    established in the evidence.

2              I'm not going to read Count One of the indictment to

3    you.  You will have it in the jury room.  Remember this.  It's

4    just an accusation.  It's not evidence.

5              Let's talk about a conspiracy.  What is a conspiracy?

6    Well, it's a kind of a criminal partnership:  A combination or

7    agreement of two or more persons to join together to accomplish

8    some unlawful purpose.  The crime of conspiracy to violate a

9    federal law is an independent offense.  It is separate and

10   distinct from the actual violation of any specific federal

11   laws, which we refer to as substantive crimes.  To sustain its

12   burden of proof with respect to conspiracy, the government must

13   establish two elements beyond a reasonable doubt:

14             First, the existence of the conspiracy charged in

15   Count One; in other words that from at least in or about August

16   of 2015 up to and including in or about November 2015 there

17   was, in fact, an agreement or understanding among two or more

18   persons either to import a controlled substance into the United

19   States or to manufacture or distribute a controlled substance,

20   intending and knowing that the controlled substance would be

21   imported into the United States.

22             Second element.  The government must prove beyond a

23   reasonable doubt that the defendant you are considering

24   knowingly and intentionally associated himself with, and joined

25   in the conspiracy charged.

1          Now I want to describe each of the two elements of the

2    conspiracy.

3          Let me start with the first element, the existence of

4    the conspiracy.

5          A conspiracy is a combination or agreement or

6    understanding of two or more people to accomplish by a

7    concerted or collective action a criminal or unlawful purpose.

8    In this instance, the unlawful purpose alleged to have been the

9    object of the conspiracy charged is:  One, the importation of a

10   controlled substance into the United States; or two, the

11   manufacture or distribution of a controlled substance,

12   intending and knowing that the controlled substance would be

13   imported into the United States.

14         The gist, or the essence, of the crime of conspiracy

15   is the agreement or understanding between two or more people to

16   accomplish an unlawful purpose.  This unlawful agreement or

17   understanding must be between two or more individuals not

18   operating under the direction of the government at the time of

19   the agreement.  The ultimate success of the conspiracy, or the

20   actual commission of the crime that is the object of the

21   conspiracy, is not required.

22         The conspiracy alleged here, therefore, is the

23   agreement to commit the crime.  That is an entirely separate

24   and distinct offense from the underlying offense, which the law

25   calls a substantive crime.  The crime of conspiracy is complete

once the unlawful agreement is made and the defendants enter

into it.  Accordingly, you may find a defendant guilty of the

crime of conspiracy to import a controlled substance into the

United States, or to manufacture or distribute a controlled

substance, intending and knowing it would be imported into the

United States, even if the actual crime was not committed.

        To prove a conspiracy, the government is not required

to show that two or more individuals sat around a table and

entered into a solemn packet, orally or in writing, stating

that they have formed a conspiracy to violate the law and

setting forth the details of the plan and the means by which

the unlawful project is to be carried out or the parts to be

played by each conspirator.  Indeed, it would be extraordinary

if there were such a formal document or specific oral

agreement.

        Common sense tells us that when people, in fact,

undertake to enter into a criminal conspiracy, a great deal is

left to unexpressed understanding.  From its very nature, a

conspiracy is almost invariably secret in its origin and in its

execution.  Conspirators do not usually reduce their agreements

to writing or acknowledge them in front of notary publics; nor

do they normally publicly broadcast their plans.  Thus, you may

infer the existence of a conspiracy from the circumstances of

the case and the conduct of the parties involved.

        To show that a conspiracy existed, then, it is

1    sufficient if the evidence shows that two or more persons in

2    some way or manner, through any contrivance, explicitly or

3    implicitly, came to an understanding to violate the law and to

4    establish an unlawful plan.  Express language or specific words

5    are not required to indicate assent or attachment to the

6    conspiracy.

7              In determining whether there has been an unlawful

8    agreement, you may consider the acts and the conduct of the

9    alleged conspirators which were done to carry out the apparent

10   criminal purpose.  The adage "actions speak louder than words"

11   is applicable here.  Often the only evidence available with

12   respect to the existence of a conspiracy is that of

13   disconnected acts on the part of the alleged individual

14   conspirators.  When taken together and considered as a whole,

15   however, those acts are capable of showing a conspiracy or

16   agreement as conclusively as would more direct proof.

17             In deciding whether the alleged conspiracy, in fact,

18   existed, you may consider all the evidence of the acts,

19   conduct, and declarations of the alleged conspirators and the

20   reasonable inferences to be drawn from such evidence.

21             It is sufficient to establish the existence of the

22   conspiracy if, after considering all of the relevant evidence,

23   you find beyond a reasonable doubt that the minds of at least

24   two alleged coconspirators met in an understanding way and that

25   they agreed, as I have explained, to work together in

1    furtherance of the unlawful scheme alleged in the indictment.

2            In short, as far as the first element of the

3    conspiracy is concerned, the government must prove beyond a

4    reasonable doubt that at least two alleged coconspirators came

5    to a mutual understanding, either spoken or unspoken, to

6    violate the law in the manner charged in the indictment.

7            Now the object of the conspiracy is the illegal goal

8    the coconspirators agree or hope to achieve.  There are two

9    objects in the conspiracy charged in Count One:  First, the

10   importation of a controlled substance from a place outside the

11   United States into the United States; and two, the manufacture

12   and distribution of a controlled substance, with the knowledge

13   or intent that some of the controlled substance would be

14   unlawfully imported into the United States.  The government

15   does not have to prove both of the objects charged beyond a

16   reasonable doubt.  Rather, an agreement to accomplish either

17   one of the two objects of the alleged conspiracy is sufficient.

18   But, if you find beyond a reasonable doubt that one, but not

19   both of the objects were proved, you must be unanimous as to

20   which object you do find to find the defendant you are

21   considering guilty.  That is, you must all be in agreement with

22   respect to at least one of the alleged objects of the

23   conspiracy charged in Count One.

24            Now if the government fails to prove that either of

25   the charged objects of the conspiracy was an object of the

conspiracy in which the defendant participated, then you must

find the defendant not guilty.  As to the first object, if the

government fails to prove beyond a reasonable doubt that the

object of the conspiracy was to bring the cocaine into the

United States, then you -- let me start again.  As to the first

object, if the government fails to prove beyond a reasonable

doubt that the object of the conspiracy was to bring cocaine

into the United States, then you must find the defendant not

guilty.  But if you find the charged conspiracy existed and at

least one of the charged objectives, the illegal purpose

element will be satisfied.

          With respect to the second object -- the distribution

and manufacture of a controlled substance with the intent or

knowledge that some of the controlled substance would be

imported into the United States -- it is not necessary for the

government to prove that the conspiracy had as its object both

the distribution and the manufacture of a controlled substance.

It is sufficient if you find that the conspiracy was aimed at

either the manufacture or the distribution of a controlled

substance with the intent or knowledge that some of it would be

later imported into the United States.  Here, too, you must be

unanimous as to which of these objective -- manufacture or

distribution or both -- the conspiracy had.

          I instruct you that cocaine is a controlled substance.

But, the purity of the narcotics involved are not elements of

1    the crimes charged, so you need not be concerned with that.  I

2    also instruct you that a defendant need not know the exact

3    nature of the drug.  Also, in considering whether a conspiracy

4    existed, you need not consider whether the government has

5    proved that a particular quantity of a controlled substance was

6    involved in the charged conspiracy.  You need only find that

7    the coconspirators agreed either to import it into the United

8    States or manufacture or distribute, knowing and intending that

9    it would be imported into the United States, some quantity,

10   however small, of a controlled substance.

11           Now let me define the terms import, distribute, and

12   manufacture with respect to the objects charged in Count One.

13           The term "import" has its common, everyday meaning;

14   namely, to bring or introduce something into an area of the

15   United States.  To import a substance means to bring or

16   transport a substance into the United States from some place

17   outside of the United States.  Remember, the charged crime is a

18   conspiracy to import; it is not necessary that either defendant

19   actually carried the controlled substance to the United States.

20           The word "distribution" means the actual,

21   constructive, or attempted transfer of a controlled substance.

22   To distribute simply means to deliver, to pass on, to hand over

23   something to another person, or to cause it to be delivered,

24   passed on or handed over to another.  Distribution does not

25   require a sale, but it certainly includes sales.

1          "Manufacture."  To manufacture a controlled substance

2     simply means to produce, prepare or process it, or to engage or

3     participate in a process that results in the production of the

4     controlled substance.

5          Now since the defendants are charged with conspiring

6     to import a controlled substance into the United States or

7     manufacturing or distributing a controlled substance, intending

8     or knowing that it would be imported into the United States, it

9     is not necessary for you to find that either defendant, or any

10    others in the conspiracy, succeeded in bringing the controlled

11    substance into the United States, or succeeded in manufacturing

12    and distributing the controlled substance.

13         Now who can be a coconspirator?  Remember that the

14    conspiracy must exist between at least two individuals who are

15    not acting at the direction of the government.  In this case,

16    the government has used several different informants in the

17    investigation, including, for example, CW-1, also known as El

18    Sentado; Jose Santos Peña, CS-1; Jose Santos Hernandez, also

19    known as Jose, Jr., CS-2; and Juan Gomez, among others.  Since

20    they are agents of the government, they cannot be conspirators.

21    None of these individuals can be considered in determining

22    whether the government has proved beyond a reasonable doubt

23    that an agreement or understanding was reached between two or

24    more individuals to accomplish the object or objects of the

25    conspiracy.  The relevant question is whether the government

has proved beyond a reasonable doubt that the criminal

agreement charged in Count One was reached between the

defendants or other individuals who are not working at the

direction of the government.

Now the second element is membership in the

conspiracy.  If you conclude that the government has proved

beyond a reasonable doubt the existence of the conspiracy

charged in Count One, you go on to the second question:  Did

Mr. Campo Flores and Mr. Flores de Freitas, or both participate

in the conspiracy with knowledge of its unlawful purpose and in

furtherance of its unlawful objective?

The government must prove beyond a reasonable doubt

that the defendant you are considering intentionally and

knowingly entered into the conspiracy with a purpose to violate

the laws of the United States, and agreed to take part in the

conspiracy to further promote and cooperate in its unlawful

objectives.

You will note that this element concerns a person's

state of mind.  Direct proof of state of mind is not always

available.  Indeed, it would be a rare case where it could be

shown that a person wrote or stated that, as of any given time

in the past, he or she committed an act with a certain state of

mind.  Such direct proof is not required.

As to this element, the terms intentionally and

knowingly mean you must be satisfied beyond a reasonable doubt

that in joining the conspiracy, if you find that one or both

defendants did join the conspiracy, the defendant you are

considering knew what he was doing -- that he took the action

in question deliberately and purposefully.  The defendant's

acts must have been the product of the defendant's conscious

objective, and not the product of a mistake or accident or mere

negligence, or some other innocent reason.

The ultimate facts of knowledge and criminal intent,

though subjective, may be established by circumstantial

evidence, based upon a person's outward manifestations, words,

conduct, acts, and all of the surrounding circumstances

disclosed by the evidence and the rational or logical

inferences that may be drawn therefrom.

The government contends that the defendants' acts,

conduct, and conversations show, beyond a reasonable doubt, the

defendants' knowledge of the unlawful purpose of the

conspiracy.  By pleading not guilty, the defendants deny that

they committed the charged offense.  It is for you to determine

whether the government has established to your satisfaction

beyond a reasonable doubt that such knowledge and intent on the

part of the defendants existed.

I have mentioned that it is not necessary for the

government to prove that either the defendant himself carried

the controlled substance across the U.S. border, nor is it

necessary for the defendants to have been the owner or

GBI9FLO1                    Charge

responsible for the controlled substance that was intended to
cross the U.S. border.  Other individuals or organizations may
be the owners of or responsible for the narcotics intended to
cross the border, but the defendants may nonetheless be guilty
of conspiring to import the narcotics or conspiring to
distribute or manufacture the narcotics with the knowledge or
intent that they be imported if the government proves the
elements of Count One as I am explaining them to you.

It is not necessary that Mr. Campo Flores and
Mr. Flores de Freitas were fully informed as to all the details
of the conspiracy to justify an inference of knowledge on his
part.  To have guilty knowledge, the defendant need not have
known the full extent of the conspiracy or all of its
activities or all of its participants.  It is not even
necessary that Mr. Campo Flores and Mr. Flores de Freitas knew
every other member of the conspiracy.  In fact, a defendant may
know only one other member of the conspiracy and still be a
coconspirator.  Nor is it necessary that a defendant receive
any monetary benefit from participating in the conspiracy or
have a financial stake in the outcome, so long as he, in fact,
participated in the conspiracy in the manner that I have
explained.

A defendant need not have joined the conspiracy at the
outset.  He may have joined it at any time in its progress and
he will still be held responsible for all that was done before

GBI9FLO1                    Charge

1    he joined and all that was done during the conspiracy's

2    existence while he was a member.  Each member of a conspiracy

3    may perform separate and distinct acts.  Some conspirators play

4    major roles, while others play minor roles.  An equal role is

5    not what the law requires.  Even a single act may be sufficient

6    to draw a defendant within the scope of the conspiracy.

7           A conspiracy, once formed, is presumed to continue

8    until either its objective is accomplished or there is some

9    affirmative act of termination by its members.  So, too, once a

10   person is found to be a member of a conspiracy, he is presumed

11   to continue his membership in the venture until its

12   termination, unless it is shown by some affirmative proof that

13   he withdrew and disassociated himself from it.

14          It is not a defense to a conspiracy charge that the

15   object of the conspiracy could not be achieved because of

16   circumstances that the conspirators did not know about.  Thus,

17   you may find the defendant you are considering guilty of

18   conspiracy even though it was impossible for him carry out the

19   plan successfully.  It is not dispositive if the individuals

20   acting at the direction of the government introduced the

21   concept of the drugs being imported into the United States as

22   long as the defendant you are considering then took a voluntary

23   action in connection with the conspiracy.

24          I want to caution you, however, that a person's mere

25   association with a member of a conspiracy does not make that

person a member of the conspiracy, even when that association

is coupled with knowledge that a conspiracy exists.  Mere

presence at the scene of a crime, even coupled with knowledge

that a crime is taking place, is not sufficient to support a

conviction.  In other words, knowledge without agreement and

participation is not sufficient.  What is necessary is that the

defendant participated in the conspiracy with knowledge of its

unlawful purpose, and with an intent to aid in the

accomplishment of its unlawful objective or objectives.

         In determining whether the defendants acted knowingly

and intentionally regarding the object or purpose of the

conspiracy, you may consider whether the defendants

deliberately closed their eyes as to what otherwise would have

been obvious.  As I said, knowledge cannot be established by a

showing that a defendant was careless or negligent.  On the

other hand, one may not willfully and intentionally remain

ignorant of a fact that is material and important to one's

conduct in order to escape the consequences of the criminal

law.

         I want to be clear that this concept only applies when

determining whether a defendant knew the objects or purposes of

the conspiracy; it does not apply when determining whether a

defendant knowingly participated in the conspiracy.  It is

logically impossible for a defendant to join a conspiracy

unless he knows that a conspiracy exists.  Thus, for example,

1   if you find that the defendants were aware of a high

2   probability that the conspiracy at issue in Count One was to

3   import cocaine into the United States, and the defendants

4   consciously avoided confirming that fact, you may infer that

5   they implicitly had knowledge; if, however, the defendants

6   actually believed that the conspiracy was not to import cocaine

7   into the United States, or if the defendants were merely

8   negligent or careless with regard to the knowledge they had,

9   they lacked the knowledge necessary to become a coconspirator.

10          If, and only if, you find that the government has

11  proved beyond a reasonable doubt that the defendant you are

12  considering is guilty of participating in the conspiracy

13  charged in Count One of the indictment, you must then determine

14  the type of the controlled substance involved in the conspiracy

15  and its weight.  The defendants maintain that there was no

16  conspiracy to import a controlled substance into the United

17  States or to manufacture or distribute a controlled substance

18  intending and knowing that it would be imported into the United

19  States, and that the government entrapped them into the

20  criminal enterprise.  They admit, however, that if the

21  conspiracy charged in the indictment is proved to exist, and

22  that the defendant you are considering joined the conspiracy,

23  then the controlled substance is cocaine, and it weighed more

24  than five kilograms.

25          In addition to all the elements of each of the charges

that I have just described for you, you must decide with

respect to Count One whether venue is proper in the Southern

District of New York.  Congress has determined that the acts

begun or committed outside the territorial jurisdiction of the

United States are chargeable under the statutes in the

indictment.  Thus, the government need not prove that the crime

was committed in this district or that either defendant himself

was present here.  Instead, it is enough if you find that the

point of entry where either defendant was first brought into

the United States was in the Southern District of New York.

I instruct you that Manhattan, the Bronx, and

Westchester, including the Westchester County Airport and the

City of White Plains are in the Southern District of New York.

On this issue and this issue alone, the government

need not prove venue beyond a reasonable doubt, but only by a

mere preponderance of the evidence.  A preponderance of the

evidence means that the government must prove that it is more

likely than not that any act in furtherance of the charge you

are considering occurred in the Southern District of New York.

Thus, the government has satisfied its venue obligations if you

conclude that it is more likely than not that the point of

entry where at least one of the defendants was first brought

into the United States was located in this district.

If you find that the government has failed to prove

this venue requirement you must acquit the defendants on Count

GBI9FLO1                         Charge

1    One.

2              Now, instruction on entrapment.

3              Mr. Campo Flores and Mr. Flores de Freitas assert as a

4    defense that they were the victims of entrapment by agents of

5    the government.  You must consider the issue of entrapment for

6    each defendant separately.

7              The defendants may not be convicted of the crime

8    charged in the indictment if it was the government who gave the

9    defendants the idea to commit the crime, if it was the

10   government who also persuaded them to commit the crime, or if

11   they were not ready and willing to commit the crime in the way

12   necessary for the crime to qualify as a federal offense before

13   the government officials or agents first spoke with them.

14             On the other hand, if the defendant you are

15   considering was ready and willing to engage in the charged

16   criminal conduct, and the government merely presented the

17   defendant with an opportunity to do so, then that would not

18   constitute entrapment.

19             Your inquiry on this issue should first be to

20   determine if there is any evidence that a government agent took

21   the first step that led or induced the defendant you are

22   considering to the criminal act charged in Count One.  If you

23   find there was no such evidence, there can be no entrapment,

24   and your inquiry on this defense should end there.

25             If on the other hand you find some evidence that a

government agent initiated the criminal acts charged in the

indictment, then you must decide if the government has

satisfied its burden to prove beyond a reasonable doubt that

the defendant you are considering was predisposed to commit the

crime in the way necessary for it to constitute a crime under

federal laws when the opportunity presented itself.

A person is predisposed when he is ready and willing

to commit a crime without any persuasion, and was awaiting a

favorable opportunity to do so.  Once you find some evidence of

inducement, the focus of the predisposition inquiry is on the

defendant's state of mind before he was first approached by the

government agent.  It is, of course, impossible to look inside

someone's head and see what he was thinking at the relevant

moment, which is -- the relevant moment here is the moment

which is before the first approach by the government agent.  So

the government may show that a defendant was predisposed to

commit a crime charged by proving any of the following:  That

the defendant participated in an existing course of criminal

conduct that was similar to the crime with which he is now

charged; or that the defendant has formed a design to commit

the crime for which he is charged before the opportunity

presented itself; or that the defendant indicated his

willingness to commit the charged crime by his ready response

to the government agent's inducement.

Remember, the focus of the inquiry is on the

defendant's state of mind prior to his first contact with the

government's agent.  You may consider all of the evidence, or

the lack of evidence, relating to a defendant's conduct before

he was first approached, directly or indirectly, by the

government agent as you assess whether the government has

proved beyond a reasonable doubt that the defendant was

predisposed to commit a charged crime.  Although you may

consider the evidence relating to a defendant's conduct after

he was first approached, you may do so only to the extent that

it shows something about the defendant's state of mind before

that point.  You may not conclude that a statement was

predisposed -- you may not conclude that a defendant was

predisposed to commit the charged crimes simply because the

government has proved all the elements of the crime beyond a

reasonable doubt.

The government can prove that a defendant was

predisposed to commit the crimes charged even if he does not

prove that the defendant consciously thought about the

particular crimes charged in this case -- conspiring to import

cocaine into the United States, or conspiring to manufacture or

distribute cocaine, intending and knowing that it would be

imported into the United States -- before those ideas were

suggested to him.  Also, the fact that a defendant lacked the

present physical ability to commit a particular charged crime

before he encountered the government agent does not, without

GBI9FLO1                    Charge

1    more, establish entrapment.  However, you may consider any

2    evidence about such matters as you assess whether the

3    government has proved beyond a reasonable doubt that any

4    defendant was predisposed to commit a particular crime before

5    he was approached, directly or indirectly, by the government

6    agent.

7            If you find that the government has proved beyond a

8    reasonable doubt that the defendants were predisposed to commit

9    the charged offense, then you should find that the defendants

10   were not the victims of entrapment.  On the other hand, if you

11   have a reasonable doubt that Mr. Campo Flores and

12   Mr. Flores de Freitas would have committed the offenses charged

13   without the government's inducements, you must acquit the

14   defendants.

15           This ends my instructions on the applicable law.  Let

16   me make a few following concluding instructions then you can

17   begin your deliberations.

18           You're about to go into the jury room and begin your

19   deliberations.  Your function now is to weigh the evidence in

20   this case and to determine whether the government has proved

21   beyond a reasonable doubt that Mr. Campo Flores,

22   Mr. Flores de Freitas or both is guilty of the offenses charged

23   in the indictment.  Remember, you must answer as to each

24   defendant separately.

25           You must base your verdict solely on the evidence and

GBI9FLO1                          Charge

1    these instructions of law, and you are obliged under your oath

2    as jurors to follow the law as I have instructed you, whether

3    you agree or disagree with the particular law in question.

4              (Continued on next page)

Gbi1flo2                        Charge

1          THE COURT:  The verdict must represent the considered

2     judgment of each juror.  In order to return a verdict, it is

3     necessary that each juror agree to it.  Your verdict has to be

4     unanimous.  If you are divided, do not report how the vote

5     stands.  And if you've reached a verdict, do not report what it

6     is until you are asked about your verdict in open court.

7          When you retire to the jury room, you must have a

8     foreperson.  That person will preside over deliberations and

9     speak for you here in open court.  Other than those functions,

10    the foreperson has no greater or lesser authority than any

11    other juror.  It is my custom to select Juror No. 1 in every

12    case to be the foreperson.  Accordingly, I am now selecting

13    Juror No. 1, Mr. Shaffer, as your foreperson.

14         It is your duty as jurors to consult with one another

15    and to deliberate with a view towards reaching an agreement.

16    Each of you must decide the case for himself or herself but to

17    do so only after an impartial discussion in consideration of

18    all the evidence in this case with your fellow jurors.  In the

19    course of your deliberations, do not hesitate to reexamine your

20    own views and change an opinion if you become convinced your

21    opinion is erroneous, but don't surrender your honest

22    convictions as to the weight of the effective evidence solely

23    because of the opinions of your fellow jurors.

24         Because it is essential that every juror consider all

25    the facts and arguments before reaching a decision, all of you

Gbi1flo2                    Charge

must be present in order to deliberate.  If any juror takes a

break during the course of your deliberations, you must stop

discussing the case until he or she returns.  Similarly, if any

juror arrives late in the morning, you may not commence your

deliberations until all 12 are present.

        For your deliberations, you'll be provided with copies

of these instructions that I am giving you, copies of the

indictment.  You will also be given one verdict sheet on which

you can record your verdict.

        I'm going to send the exhibits received in evidence

into the jury room.  If you want any testimony read, you may

also request that, but please remember that it is not always

easy to locate what you might want, so be as specific as you

possibly can in requesting testimony or portions of testimony.

If you want further explanation of the law as I've explained it

to you, you may also request that from the Court.  If there is

any doubt or question about the meaning of any part of this

charge, you may also ask for clarification or further

explanation.

        Your requests -- or any other communications you wish

to make with Court -- should be made in writing, signed by your

foreperson, and given to one of the court security officers.

Bear in mind that you are never to reveal to any person -- not

even to me -- how you, the jury, stand, numerically or

otherwise, on the questions before you, until after you've

1    reached your unanimous verdict.

2        As I say, your decision has to be unanimous, but you

3    are not bound to surrender your honest beliefs concerning the

4    effect or weight of the evidence for the mere purpose of

5    returning a verdict or solely because of the opinion of other

6    jurors.  Discuss and weigh your respective opinions

7    dispassionately, without regard for sympathy, prejudice, or

8    favor of either party, and adopt that conclusion that in your

9    good conscience appears to be in accordance with the truth.

10        Some of you have taken notes during the trial.  As I

11    told you at the beginning of the trial, this is permitted

12    because some people find that taking notes helps them focus on

13    the testimony being given.  But your notes are for only your

14    private use, as a way of helping you recall the testimony as

15    you begin your deliberations.  A juror's notes are not entitled

16    to any greater weight than the recollection of the juror who

17    did not take notes.

18        Your function now is to weigh the evidence in this

19    case and to determine whether the government has or has not

20    established Mr. Campo Flores', Mr. Flores de Freitas', or both

21    defendants' guilt beyond a reasonable doubt with respect to the

22    one count of the indictment.  You must base your verdict solely

23    on the evidence and these instructions as to the law.  You are

24    obliged under your oath as jurors to follow the law as I

25    instruct you, regardless of whether you agree are disagree with

Gbi1flo2                    Charge

1  the particular law in question.  Remember at all times that you

2  are not partisans.  You are judges -- judges of the facts.  And

3  your sole interest is to seek the truth from the evidence that

4  has been admitted in this case.

5          I'll hear the lawyers at the sidebar to see if there

6  are any further instructions.

7          (At the sidebar)

8          THE COURT:  You already have your objections from the

9  charging conference.

10          MR. JACKSON:  Yes, your Honor.  We have no additional

11  objections.

12          MR. BOVE:  Nothing from us, Judge.  Thank you.

13          THE COURT:  Thank you very much.

14          MR. RODY:  Your Honor, are you retaining the

15  alternates?

16          THE COURT:  No.  I'm going to excuse them now.

17          MR. JACKSON:  I thought in your instructions you said

18  you were going to excuse them but not dismiss them so that

19  they --

20          THE COURT:  Yes.  I'm going to excuse them.

21          MR. RODY:  Right.  But so that someone could be

22  re-called.

23          THE COURT:  Yes.

24          MR. RODY:  Got it.  Thanks.

25          THE COURT:  That's what I said in the instructions,

Gbi1flo2                    Charge

 1  didn't I?

 2              MR. RODY:  Yes.  Great.  Thanks.

 3              (In open court)

 4              THE COURT:  As to the alternate jurors, alternate

 5  jurors 1, 2, 3, and 4, only 12 jurors can deliberate before

 6  reaching a verdict, so I'm going to excuse the four alternates,

 7  Mr. LeBron, Ms. Johnson, Ms. Bruno-Villanueva, and Ms. Morris

 8  Weston.  You notice I said excused, not dismissed.  There may

 9  be circumstances where one or more of you will have to be

10  re-called, such as if one or more of the 12 jurors unexpectedly

11  becomes unavailable.

12              So I thank you for your punctuality and your faithful

13  attendance and the close attention you paid to this case, but

14  you have to leave now.  Leave behind your notebooks, the

15  transcripts, any notes you may have taken, and you'll get

16  notice of your jury service.  You'll be exempted for four

17  years.  Thank you very much.

18              (Alternate jurors excused)

19              THE DEPUTY CLERK:  Will the court security officer

20  please rise and raise your right hand, sir.

21              (Court security officer sworn)

22              THE COURT:  Okay.  Please be seated.

23              Now, ladies and gentlemen, Mr. Shaffer, you're going

24  to begin your deliberations.  We'll send all this material in.

25  You can deliberate as long as you want.  Are we serving lunch

1   today, Marlon?

2              THE DEPUTY CLERK:  Yes, your Honor.

3              THE COURT:  We're serving lunch.  You can stay as long

4   as you want and work tomorrow, Sunday, Monday, whatever you

5   want.  You determine your schedule.  You might want to consult

6   with one another to see what your deliberation schedule will

7   be, but we're at your call.  We will do what you wish to do.

8   If you want to go home at 4:00 or a little bit earlier, you

9   can.  If you want to stay a little bit later, it's strictly up

10  to you.  And that goes true for the weekend as well, and on

11  Monday, Tuesday, however long it takes you to reach a verdict.

12             Okay.  Anything else?

13             All right.  You can begin your deliberations.

14             THE DEPUTY CLERK:  All rise.

15             (At 10:55 a.m., the jury retired to deliberate)

16             THE COURT:  Please be seated.

17             We have your contact information?

18             MR. BOVE:  Yes, Judge.

19             MR. JACKSON:  Yes, your Honor.

20             THE COURT:  Anything else you want to take up?

21             MR. BOVE:  No.  Thank you.

22             MR. JACKSON:  No.  Thank you, your Honor.

23             THE COURT:  Mr. Ovalles reminds me it might be wise

24  for everyone to stay for 20 or 30 minutes in case there are

25  initial inquiries, so if you don't mind.

Gbi1flo2                    Charge

1          MR. JACKSON:  We're right down the hall, your Honor.

2          THE COURT:  We sent in copies of the charge, the

3     indictment.  Twelve copies?

4          THE DEPUTY CLERK:  Twelve copies of the indictment, 12

5     copies of the jury charge, and one copy of the verdict form.

6          THE COURT:  Okay.  Do you have the exhibits ready to

7     go in?

8          MR. BOVE:  We do, your Honor.  We've conferred with

9     defense counsel about the exhibits that are in evidence offered

10    by both the government and the defense.  We're in agreement.

11    They're in the cart here at the end of the table and can be

12    provided to the jurors.

13         THE COURT:  All right.  Marlon, why don't we give that

14    to the court security officer, have him wheel it in.

15         THE DEPUTY CLERK:  Yes.

16         MR. BOVE:  The discs are in the cart but the jurors

17    are without the ability to play the discs.  If they ask for a

18    replay, that will happen out here.

19         THE COURT:  Correct.  Same as readback of any of the

20    testimony.

21         (Recess pending verdict)

22

23

24

25

GBI9FLO3

1        (At 5:33 p.m., a note was received from the jury)

2        THE COURT:  Bring the jury in.

3        (Jury present)

4        Please be seated.

5        THE DEPUTY CLERK:  Mr. Shaffer, has the jury agreed

6   upon a verdict?

7        JURY FOREPERSON:  We have.

8        THE DEPUTY CLERK:  Will you please rise.

9        In the matter of United States of America v. Efrain

10  Antonio Campo Flores and Franqui Francisco Flores de Freitas,

11  docket no. S5 15 CR 765.  Verdict form.

12        Count One.  Conspiracy to import cocaine into the

13  United States or manufacture and distribute cocaine knowing and

14  intending that it would be imported into the United States.

15        Number one.  How do you find defendant Efrain Antonio

16  Campo Flores?

17        JURY FOREPERSON:  Guilty.

18        THE DEPUTY CLERK:  Number two.  How do you find

19  defendant Franqui Francisco Flores de Freitas?

20        JURY FOREPERSON:  Guilty.

21        THE COURT:  Do you want the jury polled?

22        MR. JACKSON:  Yes, please, your Honor.

23        MR. RODY:  Yes, your Honor.

24        (Jury polled; each juror answered in the affirmative)

25        THE DEPUTY CLERK:  The verdict is unanimous.

1          THE COURT:  Ladies and gentlemen, I never comment on

2    the jury's verdict except to say thank you very much for your

3    diligent and conscientious service.  We're very appreciative.

4    You're excused now.  Thank you very much.  If you want to talk

5    to the lawyers you can stay in the jury room.  You don't have

6    to.

7          (Jury excused)

8          THE COURT:  Please be seated.  Do you want to take up

9    a schedule, Mr. Jackson, Mr. Rody?

10         MR. JACKSON:  Yes, please, your Honor.

11         Your Honor we'd like -- we would request I believe

12    first I guess two weeks -- actually I think we might request

13    more.

14         THE COURT:  Next week is a very short week.

15         MR. JACKSON:  That's correct, your Honor.

16         MR. RODY:  Your Honor, I think under the rules we have

17    a limited period of time in which to request an extension of

18    time to file any posttrial motions so at this time we would

19    request 60 days to file any posttrial motions.

20         THE COURT:  That would be the end of January.

21         MR. RODY:  That's probably right, Judge.

22         THE COURT:  The week of the 23rd, Mr. Rody?

23         MR. RODY:  That's fine, Judge.  Thanks.

24         THE COURT:  Government's response.

25         MR. BOVE:  We'd request three weeks to respond, Judge.

GBI9FLO3

1           THE COURT:  The 13th of February.

2           MR. BOVE:  Thank you, Judge.

3           THE COURT:  And a week to reply, Mr. Rody?

4           MR. RODY:  That would be fine, Judge.  Thanks.

5           THE COURT:  Marlon do you want to read the schedule

6    back.

7           THE DEPUTY CLERK:  Yes, your Honor.

8           Motion by January 23rd, 2017.  Response by

9    February 13.  Reply by February 21.

10          THE COURT:  Anything else?

11          MR. RODY:  One moment, Judge.

12          Judge I don't know if your Honor wants to set a

13   sentencing date during the holidays.  We would ask for

14   additional time.  90 is the norm.  We would ask for 120 for

15   starters.  There may be a hearing that's necessary at some

16   point, a sentencing hearing.

17          THE COURT:  We won't set a sentencing date.  We'll set

18   a control date of the fourth of March.

19          MR. RODY:  That should be fine, Judge.

20          THE DEPUTY CLERK:  Sentencing control date of Tuesday,

21   March 7, 2017.

22          MR. RODY:  That's fine, Judge.  Thanks.

23          THE COURT:  Anything else?

24          MR. JACKSON:  Not at this time, your Honor.  Thank

25   you.  (Adjourned)