

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

The Silvio J. Mollo Building
One Saint Andrew's Plaza
New York, New York 10007

April 7, 2017

Via ECF & Email
Honorable Paul A. Crotty
United States District Judge
Southern District of New York
Email: CrottyNYSDChambers@nysd.uscourts.gov

    Re: <u>United States v. Campo Flores, *et ano.*</u>,
       S5 15 Cr. 765 (PAC)

Dear Judge Crotty:

    The Government respectfully submits this letter, in response to the Court's March 24, 2017 Opinion & Order (Dkt. No. 167 (the "Order")), to confirm that there are no additional *Brady* or *Giglio* materials to be produced in response to the Defendants' November 14, 2016 letter request (Dkt. No. 166-1 (the "November 14 Letter")).

    The November 14 Letter demanded, in essence, "all" documents in existence relating to two categories: (1) CS-1's January 2013 testimony—in his legal name[1]—during a trial in Richmond, Virginia (the "Richmond Trial"); and (2) any "materially false statements or omissions in other investigations and prosecutions" by CS-1. Before receiving the November 14 Letter, however, the Government complied with its *Giglio* obligations relating to these subjects by, among other things, informing the defendants of CS-1's failure to disclose to *anyone*, prior to June 2016, his illegal drug dealing between 2012 and May 2016. For example, before the September 2016 suppression hearing, the Government produced to the defendants CS-1's cooperation agreement and the transcript of his guilty plea, which included his allocution to a false

---

[1] The legal names of CS-1, CS-2, and CS-3 were disclosed to the defendants, prior to the suppression hearing, in early September 2016.

statements charge.[2]  Also before the suppression hearing, a review of DEA administrative files relating to CS-1 confirmed that there were no other findings by the DEA of lies or evidence mishandling by CS-1, apart from the issues that were disclosed to the defendants in connection with the hearing.  During the trial, at approximately 9:00 a.m. on November 15 (prior to the completion of cross-examination of CS-1), the Government responded to the November 14 Letter by, among other things, providing the transcript of CS-1's testimony at the Richmond Trial.

Nothing more was, or is now, required.  First, the requests at issue from the November 14 Letter were plainly overbroad in that they demanded open-file review relating to this and other investigations.  *See Pennsylvania* v. *Ritchie*, 480 U.S. 39, 59 (1987) ("Defense counsel has no constitutional right to conduct his own search of the State's files to argue relevance."); *United States* v. *Bagley*, 473 U.S. 667, 675 (1985) ("[T]he prosecutor is not required to deliver his entire file to defense counsel, but only to disclose evidence favorable to the accused that, if suppressed, would deprive the defendant of a fair trial . . . ."); *United States* v. *Ruiz*, 702 F. Supp. 1066, 1069 (S.D.N.Y. 1989) ("Defendant's broad requests, although made under *Brady*, seem to be, in effect, a demand to conduct a thorough review of the government's investigative file.  The law plainly does not support such discovery.").  Demands by criminal defendants do not expand the scope of the Government's disclosure obligations.

Second, the Government's diligence with respect to the issues raised in the November 14 Letter was reasonable and sufficient.  The search exceeded the boundaries of the prosecution team, and any *Giglio* material yielded by that review was disclosed to the defendants.  *See United States* v. *Meregildo*, 920 F. Supp. 2d 434, 441 (S.D.N.Y. 2013) ("[T]he prosecution team does not include federal agents, prosecutors, or parole officers who are not involved in the investigation.").  Moreover, the defendants were plainly aware—at the suppression hearing as well as the trial—of CS-1's prolonged failure to disclose his drug trafficking, and *Brady* and *Giglio* did not require the Government to produce every document reflecting the same omission.  *E.g.*, *United States* v. *Hsu*, 669 F.3d 112, 117 n.2 (2d Cir. 2012) ("Evidence is not suppressed within the meaning of *Brady* if the defendant or his attorney either knew, or should have known, of the essential facts permitting him to take advantage of that evidence." (internal quotation marks omitted)).  Indeed, by the time the defendants transmitted the November 14 Letter at approximately 10:05 p.m., CS-1 had already been cross-examined regarding the false statements charge, the

---

[2] The transcript provided to the defendants reflected that CS-1 admitted at his guilty plea that, "from 2012 until 2016, I did not disclose to the DEA, even after I had been meeting with them during that time, and I hid information from them[,] about the crimes that I was committing." (3504-23 at 14).

factual basis for it, and his withholding of information about his illegal drug trafficking in connection with his testimony at the Richmond Trial. (Tr. 886:13-894:2).[3]

Finally, in response to the Court's March 24, 2017 Order, a DEA agent from the prosecution team communicated with 12 DEA agents and task force officers who at various times had administrative responsibility for handling CS-1—none of whom were members of the prosecution team—and re-confirmed that there were no other instances of which the DEA is aware where CS-1 lied by omission, made affirmatively false statements, or mishandled evidence.

In sum, there are no additional *Brady* or *Giglio* materials that are responsive to the November 14 Letter. The Government is presently in compliance with its obligations under *Brady* and *Giglio*, is aware that those obligations apply on a prospective basis, and will remain in compliance with those obligations in the future.

Respectfully submitted,

JOON H. KIM
Acting United States Attorney

By: _____
Emil J. Bove III
Brendan F. Quigley
Assistant United States Attorneys
(212) 637-2444 / 2190

Cc: Defense Counsel
(Via Email)

---

[3] In addition, earlier in the trial, defense counsel cross-examined Special Agent Gonzalez regarding whether CS-1 "fooled the DEA for years," and the fact that neither he nor any of his "fellow officers figured it out" prior to the 2016 investigation of CS-1. (Tr. 351:11-16).